[Filed December 16, 1889.]

RUFUS INGALLS, RESPONDENT, *v.* HARRIET B. CAMPBELL, APPELLANT.

The common law did not recognize the right of either parent to appoint a testamentary guardian for his children. The right was conferred on the father by the statute, 12 Chas. II, and the statute, shorn of its verbiage, has been substantially re-enacted in this State. This statute did not impose or recognize any civil disabilities in the wife, nor create any civil disability in her which did not previously exist, but was a new or added right conferred upon the father, and left the mother where she was before its enactment; *held,* therefore, that the want of capacity in the wife to make such an appointment is not a civil disability created by § 2885, and is not repealed by said section.

As the father enjoyed the right to the full and complete control of his children before the enactment of the statute giving him the right to appoint a testamentary guardian, and as such right to the custody of the children and management of their estates is not dependent upon it, or essential to its existence, and as § 2878 does not refer in terms or otherwise to § 2885; *held,* that the effect of § 2878 is to so modify or repeal, in whole or in part, so much of § 2885 as is incompatible with the mother's right to the full and complete control of the children and their estate at the father's death, as the father has at the mother's death, but does not confer upon the mother the right to appoint a guardian.

APPEAL from the circuit court for Multnomah county.

*C. B. Bellinger* and *R. & E. B. Williams,* for Appellant.

*Williams & Wood* and *Mitchell & Tanner,* for Respondent.

LORD, J.—The facts in this case are these: On the fifth day of April, 1889, Esther Holladay, widow of Ben Holladay, died, leaving a will, in which she appointed General Rufus Ingalls executor thereof, and the guardian of her two children, Linda Holladay and Ben Campbell Holladay. The will was regularly proven and admitted to probate in the county court on the twentieth day of April, 1889, and General Ingalls was appointed executor of the will, but in regard to the matter of his application to be appointed

guardian of the children in accordance with the will of the mother, Harriet B. Campbell, the grandmother of said chil dren, Maria A. Smith and Mrs. Wm. H. Barnhart, the aunts, and Joseph Holladay, the uncle of said children, filed an answer alleging that they were the nearest relatives of said children, and united in asking the appointment of said Harriet B. Campbell as the guardian of said children. Upon due consideration, the county court granted the prayer of said relatives for the appointment of the said Harriet B. Campbell, which, upon appeal to the circuit court, was reversed, and from that decision this appeal is taken.

The question involved and to be decided is the right of a mother to appoint by will a guardian for her children. The common law did not recognize the right of a testator to appoint a guardian for his children during their minority. While it made various provisions for the care of infants and their estates, the right to make any testamentary dis-positions of the guardianship of the children was denied or withheld. It was years after the power to dispose of his property by will had been established by various statutes, that the right to make a testamentary disposition of the guardianship of his minor children was conferred. This right was given by the statute of 12 Charles II, 2 chap. 24, and by the words of the Act the father only can appoint the guardian or guardians, who shall have the custody of his children and the control of their estates during minority. The power thus conferred, when exercised to its fullest extent, invested the testamentary guardian with an authority over the children and control of their estates almost as coëxtensive as that enjoyed by the father himself. His appointment supersedes all other guardians, and all control on the part of the mother. So absolute is this power that it may be exerted in utter disregard of the claims of maternal affection and despite its protests, and commit the custody of the children to a stranger and embitter the life of the mother by depriving her of the society of her offspring. It matters not how amiable and

refined she may be, how competent in every respect to direct the education, and to participate, at least, in the custody of her children, the paramount right of the testamentary guardian deprives her of all right to interfere with his custody of them, or their education. Said Lord Chancellor Cottenham: "It is proper that mothers and children thus circumstanced should know that they have no right as such to interfere with the testamentary guardians, and if, under the peculiar circumstances, I think it proper now to leave the child in the custody of the mother, it is not in respect to right in the mother, but it is in consequence of that power which the court has of controlling the power of testamentary guardians." *Talbot* v. *Earl of Shrewsbury*, 4 Myl. & Cr. 683. It was the legal effect of the fact of guardianship that constituted him a trustee, and like all such, subject to the general supervision of chancery to control his actions in a proper case. *Beaufort* v. *Betty*, 1 P. Will. 702. While the court of chancery had thus the power to control his actions, neither the statute nor the court recognized any right in the mother to the custody and control of her children; but on the contrary, the power conferred on the father to make a testamentary disposition of his children was unlimited and might be exerted against his unborn child. Under no circumstances could she exercise the power to appoint a testamentary guardian, and wherever she has made such appointment, the courts have declared it absolutely void. *Ex parte Edwards*, 3 Atk. 519. *Ex parte Bell*, 2 Tenn. Ch. 327. In all this the statute was in accord with the harsh features of the common law, which, in the marital relations, destroyed the wife's personality, deprived her of her property and denied her the right of the custody of her children, save such as her husband might vouchsafe. Cases there are, which show, so absolute and unqualified was his right to the custody of his children and to take them from the mother, that irrespective of her merits and his demerits, in all the relations of domestic life, he could exclude her from all access to them, and might do this even from the worst of motives.

*Rex* v. *Grcenhill*, 4 Ad. & Ellis, 624. See also Forsythe on Custody of Infants, 11, 12.

It is to the credit of the American courts that they have been guided by a more liberal policy than those of England in awarding the custody of the children to the mother, and have regarded their welfare and interest in such controversies as the paramount obligation to be considered. *Mercien* v. *People*, 25 Wend. 104; Schoulder on Domestic Relations, 339 and 40; Hurd on Habeas Corpus, 472, *et seq.* Yet, notwithstanding the liberality of our courts in this regard, the statute of 12 Charles II has been re-enacted in most of the States, including our own State, shorn only of its verbose phraseology, but without any intention, it is thought, of varying its construction. 2 Kent's Comm. 225. It is true that in some of the States, of late years, the injustice to which it subjected mothers provoked a revolt in public sentiment and resulted in legislation which has softened its rigors, or so materially changed its features as to place the parents comparatively upon an equality in the right of the custody of the children. And while the spirit of modern progress has characterized our legislation, leading to the removal of numerous disabilities created by the common law, and to a recognition of her individuality and of her rights of property, and what is equally or more sacred to her, the right to direct and control the training and custody of her offspring, in case of divorce, where the husband is in fault, or shown in any controversy between them to be an unfit custodian of them, yet this relic of barbarism in the form of a statute is still in force in our own State, unless its rigors have been softened or repealed by the Act of 1880.

With a full knowledge, then, of the injustice which may result to the mother from the operation of this statute, we are to turn to the statute of 1880 in order to determine whether its effect has been to give the mother the right to appoint a testamentary guardian for her children in the same manner as the father could do; for unless the statute works this result, the judgment must be reversed. Our

statute permitting the father to appoint a guardian by will is as follows: "Every father may, by his last will, in writing, appoint a guardian or guardians for any of his children, whether born at the time of making the will or afterwards, to continue during the minority of the child or for a less time," etc. § 2885, Hill's Code. "All laws which impose or recognize civil disabilities upon a wife, which are not imposed or recognized as existing in the husband, are hereby repealed; *provided*, that this Act shall not confer the right to vote or hold office upon the wife, except as is otherwise provided by law; and for any unjust usurpation of her property or natural rights, she shall have the same right to appeal, in her own name alone, to the courts of law or equity for redress, that the husband has." § 2998, id. "Henceforth the rights and responsibilities of the parents, in the absence of misconduct, shall be equal, and the mother shall be as fully entitled to the custody and control of the children and their earnings as the father, and in case of the father's death the mother shall come into as full and complete control of the children and their estate as the father does in case of the mother's death. All laws and portions of laws inconsistent with the foregoing are hereby repealed." § 2887, id.

The two last sections constitute the Act of 1880, and the contention is, that they give the mother the same right to appoint a testamentary guardian in case of the father's death, as the father would have in case of the mother's death. The first section (2998) provides that "all laws which impose or recognize civil disabilities upon the wife which are not imposed and recognized as existing as to the husband are hereby repealed." "All laws" would include both the statutory and common law, and whatever of these that impose or recognize civil disabilities in the one that is not recognized in the other, are hereby repealed. The manifest object of the section is to repeal, not to modify or amend, all laws, whether common or statutory, which have the effect to impose or recognize such civil disabilities. What are the "civil disabilities" of the wife?

XVIII. OR.—30.

Civil disabilities means "disqualification created by law." Anderson's Law Dictionary, "Civil Disability." To the wife it means some disqualification created by, or the result of law, which renders her incapable of doing certain acts or things, At common law, marriage merged the existence of the wife into that of the husband, and constituted them one person in the law. The legal effect of the coverture was to disendow her of her property, and to civilly disqualify her to do many other acts which she was qualified to do as a _femme sole._ At common law the right to make a testamentary disposition of the guardianship of children did not exist. Neither parent had the authority to appoint a guardian by deed or will during the minority of the children. The right was conferred upon the father by the statute of 12 Charles II, and created in him a legal capacity to make such appointment, which, before the statute, the law did not accord to any person. The want of capacity in the mother to make such a testamentary disposition did not arise by reason of the right conferred upon the father, or of the marriage, because before the Act, and while the marriage might have existed, neither would have been qualified to make such a testamentary appointment. It was simply a right conferred upon the father, and not one denied the mother by the statute, for the statute left her just where she was before it was enacted. So to speak, it was a case where one was taken and the other was left,—not an unusual thing in that age. The effect, therefore, of the statute was not to create any disqualification in the wife, but to confer a new power on the father. In substance, the statute of 12 Charles II has been adopted or re-enacted in this State, and provides that "every father" may appoint a testamentary guardian for his children during their minority. The same principle of reasoning applies to this statute. By it the father has conferred upon him the right to appoint a guardian by will; it invests him with the capacity to do that act, but it leaves the mother as she was, and as he was before its enactment, without such capacity. As between them he

is qualified to appoint a testamentary guardian and she is not, but his qualification was derived from statute, but her disqualification was not—that existed before the statute, but was not the effect of it. Hence a want of power or capacity in the wife or mother to appoint a testamentary guardian is not a civil disability created by the statute, or the result of its enactment. When, therefore, § 2998 says: "All laws which impose or recognize civil disabilities in the wife, etc., are hereby repealed," it does not refer to or include § 2885—statute, as we have called it—authorizing the father to make such testamentary appointment, as that section, we have shown, does not create any civil disability in the wife, and consequently cannot have the effect to impose or recognize any civil disabilities upon her. Our conclusion, then, is that the statute, or § 2885, must stand intact as it has been enacted so far as § 2998 is concerned. Nor is this result different from what counsel for the appellant would have it, since the plain purpose of § 2998 is not to amend or modify, but to repeal, and to give it that effect upon § 2885 would be fatal to their claim.

We now come to construe § 2878, and it is upon the latter clause of this section that counsel more confidently rest their argument for the authority of the wife or mother to appoint a testamentary guardian. That section provides: (1) "That the rights and responsibilities of the parents in the absence of misconduct shall be equal, and (2) that the mother shall be as fully entitled to the custody and control of their children and their earnings as the father, and (3) *in case of the father's death, the mother shall come into as full and complete control of the children and their estate as the father does in case of the mother's death.* All laws or portions of laws inconsistent with the foregoing are hereby repealed." Of this section it is the italicized clause upon which the right of the mother to appoint a testamentary guardian is chiefly urged. We are to understand, however, at the outset, that all laws or portions of laws inconsistent with, or which deny the mother, in case of the father's death, as full and complete control of the children

and their estate as the father has in case of the mother's death, are hereby repealed. Before the enactment of this section, the father had the right to appoint a testamentary guardian, who took office at his death, and if the mother was living could deprive her of the custody and estate of the children, but she had no such right. But, before the enactment of the statute which gave the father the right to appoint such guardian, his right, at common law, was full and complete to control his children and their estate. This statute added nothing to his right to the full control of the custody and tuition of his children while he lived, whether the mother be living or dead. In this matter their relations were grossly unequal. The right conferred by the statute only gave him the power to extend the custody and tuition of the children to another after his death, to the deprivation of the mother of the society of her offspring, with all its untold sufferings. But the right of the father to their custody did not depend on the right to appoint a testamentary guardian. That existed before the right was conferred to make such appointment, and may exist without it. The existence, therefore, of the right in the father to make such appointment is not, nor ever was, necessary or essential to his full and complete control of the custody and tuition of his children. He had such custody before the right to make such appointment was conferred, and the presence or withdrawal of that right can in no way affect his right to the custody of his children.

The case stands in this wise. That at the father's death, the mother cannot come into the full and complete control, if the father chooses to exert the right conferred by the statute against her, but her death in no way effects his right to such full and complete control of the children, irrespective of his right of testamentary appointment. What, then, is the purpose of the statute when it proposes in direct terms to give the mother the full control and custody of the children and their estate at the father's death, as he enjoys at her death? Is it the right to appoint a testamentary guardian? There is no suggestion

of that kind in the section.    Besides, we have shown that such right to the custody of the children and their estates may devolve upon one, as it did upon the father, before the right to appoint a testamentary guardian was conferred, and consequently, that such right of custody may exist without it.    The mother, therefore, may have conferred upon her the control of her children and their estates, without the right to appoint a testamentary guardian, at the death of the father.    But it is manifest that while the right to make such an appointment exists in the father, that it may be exerted to deprive the mother of the custody of the children and their estate, at the father's death, and that such right in him is inconsistent with the full and complete control contemplated by § 2873 to be conferred upon the mother at his death.    If, for instance, the husband appoint a testamentary guardian and dies, the wife still living, the right of such guardian to the custody of the children and their estate is utterly inconsistent with the full and complete control of the same which this section designs and intends to confer upon the mother at the death of the father.    No question is made but what the upper clauses of that section contemplate an equality of rights in respect to the children during their lives, and none, it seems to me, can be made, but what it is the purpose of the last clause to maintain such equality of rights as to the custody of the children and their estate at the death of either.    To make them equal in this regard and give her such control and custody, the right of the father to make a testamentary appointment must be modified or repealed.    It cannot exist in him intact and unabridged consistently with the rights conferred upon her by this section, and to that extent, whether in whole or in part, it must be repealed.    As the intendment, then, of § 2878 is, that their rights during their joint lives in respect to their children shall be equal, and that at the death of either of them whatever of law or of statute shall prevent or deny the survivor from having the full and complete control of the children and their estates shall be

repealed, it follows that so much or all of the statute known as § 2885 as is in conflict therewith, must be repealed.   So that when the father dies, the mother, in the language of the last clause of § 2878, "shall come into as full and complete control of the children and their estate as the father does in case of the mother's death ;" but as the right to appoint a testamentary guardian is not essential to such control or custody and its existence in the father as conferred is incompatible with the full enjoyment of the rights conferred upon the mother by this section, it must be modified or repealed to that extent. It was intimated at the argument that this mode of legislation was of questionable validity, but I have not deemed it necessary to examine it in that regard, but have endeavored to give the mother every right intended to be conferred by it, the right to as full and complete control of the children and their estates as the father has at the mother's death, but as the right to appoint a testamentary guardian is not suggested in terms or otherwise in the section, and such right is not essential or necessary to the full enjoyment of the custody of the children and their estate, it cannot be considered as included or conferred by this section.

As a consequence, it follows that the decree must be reversed, and it is so ordered.