EUGENE C. HERNANDEZ AND ST. MARY'S ORPHAN HOME, APPELLANTS, v. SARAH ANN THOMAS, APPELLEE.

PARENT AND CHILD—CUSTODY OF CHILDREN—TESTAMENTARY GUARDIAN—CONTRACTS FOR CUSTODY OF CHILDREN—FATHER MAY DICTATE RELIGIOUS TRAINING.

1. A will made by the Mother of minor children undertaking to give the custody, care and control of such children to another is a nullity. Our statute, Section 2086, Revised Statutes, which is a substantial reproduction of the English statute of 12th Charles II. Chapter 24, Section 8, confers upon the Father alone the power to appoint a testa-

mentary guardian for his infant child by last will and testament or by deed. Such power is not conferred by our statute upon the Mother, and she has no such power or right from the common law, or from any other source.

2. Agreements by parents for the transfer to others of the custody of their children are against public policy, and are not, in cases circumstanced like the case at bar, enforceable or binding upon the parties.

3. While in awarding the custody of children the paramount consideration is the welfare of the child, rather than the technical legal right of the parent, yet the courts should not lightly and without good cause invade the natural right of the parent to the custody, care and control of his infant child.

4. The father of infant children, where there is no sufficient cause for depriving him of the right, has the legal right to the custody and control of such children, and has the right to have them educated in any religious faith that he sees proper, whose tenets do not inculcate violation of the laws of the land.

5. As against strangers, the Father, however poor and humble, if of good moral character and able to support the child in his own style of life, cannot be deprived of the privilege by anyone whatever, however brilliant the advantages he may offer. It is not enough to consider the interest of the child alone. And as between Father and Mother, or other near relative of the child, where sympathies of the tenderest nature may be confidently relied on, the Father is generally to be preferred.

This case was decided by Division B.

Appeal from the Circuit Court for Duval County.

STATEMENT.

On April 21st, 1902, the appellant Eugene C. Hernandez filed his bill for divorce against his wife Madge G. Hernandez upon the statutory ground of wilful, obstinate

and continuous desertion for more than a year. The bill after alleging the desertion by the wife also alleged that the parties had two children named Blanche and Edith, the one seven years of age the other five years old, and the complainant voluntarily offered and consented in said bill that the custody of said two children should go to the mother until they arrived at the age of fifteen years when the said children were to have the right to select which parent they desired to live with, the father, in the mean time to have the right to visit and see them at all reasonable times. The wife answered the bill admitting the desertion of her husband as alleged, but sought in the answer to justify such desertion on the ground of alleged failure of the husband to provide for her and her two children, and upon the ground of unkind treatment by the husband. At the hearing before the master the complainant proved all of the allegations of his bill, but the defendant wife failed to introduce any evidence whatever to sustain her answer. On the 25th day of June, 1902, the Circuit Judge in and for Duval county rendered a decree divorcing the said parties *a vinculo matrimonii*, and, in consonance with the voluntary offer in the complainant's bill, adjudged the custody of the said two minor children to their mother Madge G. Hernandez until they each arrived respectively at the age of fifteen years, or until the further order of the court, when it was adjudged, said children should have the right to select which parent they should live with.

On June 1st, 1903, Eugene C. Hernandez filed his petition in the Circuit Court of Duval county in which he set forth the above mentioned decree of divorce, and alleged that his said divorced wife Madge G. Hernandez had died during the month of September, 1902, and that upon her

death he had taken the custody and control of his said two minor children Blanche and Edith, then aged, respectively, eight and six years. Said petition further alleged that while said children were under the care and control of his wife they were permitted to go at large and to spend a large part of their time on the streets, and that since their mother's death, although he had endeavored to keep them at home, they were inclined to be wild and to leave home and go off and be upon the streets; that he was unable to give them that care and attention necessary for their benefit and deemed it desirable that they should be put in such custody and care as will enable them to be properly educated and reared; that it was his desire that his said children should be reared and educated in the faith of the Roman Catholic church, and that he desired that said children should be placed in the custody and control of St. Mary's Orphan Home in the city of Jacksonville, Florida, to be there cared for and educated, and that he could and would pay the sum of five dollars per month for the care and maintenance of said children; that said Orphan's home had expressed its willingness to take said children and educate and provide for them until they arrived at the age of eighteen years. Said petition prayed that said St. Mary's Orphan Home might be awarded the care and custody of said minor children until they had arrived at the age of eighteen years.

On June 1st, 1903, the Circuit Judge of Duval county made an order upon such petition granting the prayer thereof, and reciting the fact that it appeared to the court that it was for the best interests of said minors that they should be placed in the custody and control of said St. Mary's Orphan Home, and decreed and ordered that said two minors should be placed in the custody and control of said Home until each of them shall have arrived at the

age of eighteen years, or until the further order of the court. And it was further ordered and decreed that the petitioner Eugene C. Hernandez should pay to the said Orphan's Home the sum of five dollars per month for the care, maintenance and support of said children.

On October 15th, 1903, the appellee, Sarah Ann Thomas, filed an application to be permitted to intervene in the said divorce suit formerly pending between Eugene C. Hernandez and Madge G. Hernandez, by petition presented with the application for such intervention. Said petition after setting forth the decree of divorce granted to Eugene C. Hernandez from his wife Madge G. Hernandez and its provisions as to the custody of said two minor children, alleged that the said Madge did continue to care for said two children and to rear them in a proper manner until the 16th day of September, 1902, when she died; that just before her death she did make and execute a last will and testament whereby she gave and bequeathed the custody of the said children to petitioner Mrs. S. A. Thomas who was her mother and Mrs. A. M. DeLucca who was her sister; that soon after the death of said Madge the said Eugene called at the home of her the said petitioner, where the said Madge had lived for about two years preceding her death, and demanded possession of said children, and that she, being advised by her neighbors that he had a right to take them as matter of law, permitted him to take them from her possession, but not until she had exacted a promise and agreement from the said Eugene that whenever he found that he could not support the children as well as they had been supported by petitioner that they should be returned to her; that since that time she had learned while she was absent from the city of Jacksonville that said children were being allowed to run at large without any care or attention

being given them, and that as soon as it was possible for her to do so she returned to Jacksonville for the purpose of getting possession of the said children; that in the mean time, however, the said Eugene C. Hernandez did file a petition in the Circuit Court of Duval county to have said children given to the care and custody of St. Mary's Orphan Home in the city of Jacksonville all of which was done without notice to her, and which petition had been granted by the court, and that said two children were being held by said St. Mary's Orphan Home against the consent of both of said children whose wish it is to live with petitioner who is their grand mother; that she, petitioner, was amply able financially, and is a proper and fit person in all respects to care for, maintain, rear, educate and protect the said children, and that she is now entitled to the possession and custody of said children, and that it is to the best interests of the said children that petitioner have the care and custody of them. The petition prayed that the order and decree of the court made June 1st, 1903, consigning the custody and care of said children to St. Mary's Orphan Home be vacated and set aside, and that she be decreed to have the care, custody and control of said children until they each arrived at the age of eighteen years. A copy of the purported will of said Madge G. Hernandez bequeathing the possession and custody of said children to Sarah Ann Thomas the petitioner and to their Aunt, Mrs. A. M. DeLucca was attached as an exhibit to said petition.

Eugene C. Hernandez and the representative of St. Mary's Orphan Home filed divers objections to the petitioner being allowed to intervene by petition in the divorce suit aforesaid, which objections it is unnecessary to state further.

The court below overruled all of these objections and permitted the petition to be filed and required the defendants Eugene C. Hernandez and St. Mary's Orphan Home to answer or defend by a fixed day. Eugene C. Hernandez demurred to the petition upon divers grounds not necessary to be noticed further. This demurrer was overruled by the court.

Sister Mary Ann on behalf of St. Mary's Orphan Home answered the petition alleging that the said two minor children had been consigned to the custody and care of said Orphan Home not only by the order and decree of the Circuit Court for Duval county, but also by a deed in writing voluntarily executed by Eugene C. Hernandez the father of said children; that St. Mary's Orphan Home is not an incorporated institution but is a private institution for the education, rearing and maintenance of orphan children in the Roman Catholic faith and is confined to children who are entirely orphaned, or whose parents desire them educated and reared in the Roman Catholic faith, and who are willing to pay for the care, maintenance and education of their children in accordance with their means; that when said children first came to said home they had acquired the habit of using improper and indecent language, and that the sisters in charge of said Home had found it necessary to take them aside and speak to them and by teaching and admonition eradicate from their minds the improper language and thoughts they had acquired before coming there; that since they have been there they have been carefully and tenderly cared for and nurtured; that they have ceased to speak improper language, have been well fed, have been given daily secular as well as religious instruction, have been kept clean and tidy, have not been permitted to run at large in the street, but have been kept within the en-

·closure of the Home, except when accompanied by one or more of the Sisters in charge of the Home, have been given ample exercise, and that everything possible to be done has been done and is being done to promote their physical mental and moral welfare, and that said children have been and are in good health, well contented and happy; and that their father has faithfully paid to said Home the sum of money he agreed to pay for their care; that said children express themselves contented to remain at said home, but that they are of such tender age as to be incapable of deciding for themselves what is to their best interests; that said children are taught to entertain a proper love and regard for their relatives, which relatives, including the petitioner, are permitted to and do visit them there, and that said Home does not seek to alienate their affection from their relatives; that said children are surrounded at said Home by educational and moral influences that conduce directly to their moral and mental welfare, and that it is for the best interests of said children that they should remain at said Home. It was further averred in the answer that the petitioner had no right at law or in equity to intervene in behalf of said children, and that no facts were set forth in the petition which entitle her to the custody of said children, and the same benefit is claimed therefrom as though the respondent had demurred to such petition.

Eugene C. Hernandez also answered the petition separately. He alleges in his answer that while his divorced wife Madge G. Hernandez had the nominal care and custody of said two children, that they were in the actual custody of the petitioner Sarah Ann Thomas for the greater part of the time after the granting of the divorce; that shortly after the decree of divorce was rendered the

34 S. C.

said Madge G. went to the city of Tampa where she remained until a short while before her death, and that during her absence the said children were left in Jacksonville with their grandmother, the petitioner, who bestowed so little care and attention upon them that they were habitually permitted to run at large upon the streets of Jacksonville; that the petitioner during such time resided in a disreputable neighborhood where her premises abutted the premises of a notorious house of ill-fame occupied by prostitutes, and that said children were permitted to run at large on the premises occupied by said prostitutes. He denies that said children were reared and cared for in a proper manner while in the custody of their mother, but alleges that they were not reared and cared for in a proper manner during such time; that they were not sent to school, but were permitted to run at large, dirty, with soiled clothes on, unkept and uncared for on the streets of Jacksonville in a locality where numerous women of illfame resided; that he the said Eugene C. had married again, and by his second wife had one infant child, and that by reason of her feeble health and with her infant child to care for she found it impossible to keep the said two minor children in the house and off of the streets, or to restrain them from the vicious habits they had contracted during the nearly two years while they were in the nominal care and custody of their mother and grandmother, without chastising said children, which she refused to do because she did not wish to subject herself to the criticism of ill treating them as their stepmother; that a large part of her time was occupied in hunting them up and bringing them back to the house, and that although he had repeatedly counseled and advised them, he found that they had been so spoiled, and allowed to have their own way prior to their mother's death, while

in the custody of their said mother and grandmother, that they required constant watching, and that he became convinced that it was necessary for their moral welfare and to their proper rearing and education that he should place them where they would be properly educated and their moral and religious training attended to as he desired, and placed them for those reasons at said St. Mary's Orphan Home, where he could and does have easy and frequent access to them, and where they would be given proper religious training in the Roman Catholic church of which he himself is a member; that he pays an agreed sum of five dollars per month for their care and support at said home. Said answer further denies that the petitioner is a fit and proper person to care for, rear and educate said children; that she has the reputation of being a fortune teller and of being the vendor of medicines to women to procure miscarriages and abortions; that said children are well cared for at said Home in every respect; that they are being properly educated, and their moral and religious training are looked after in accordance with his wishes; that they are there given secular and religious training every day in the week; that they attend church regularly, are kept from immoral and contaminating associates and influences; that they are happy and contented at said Home; that he is praying for their maintenance regularly and that they are living in a manner and style far superior morally, socially and religiously to any influences that the petitioner can surround them with.

Replication was filed to these answers, a master was appointed to take testimony and a voluminous mass of testimony was taken and reported to the court. At the final hearing upon the petiton, answers and testimony the Circuit Judge made a final order or decree vacating its

former decree made on June 1st, 1903, conferring the custody of said two minors to the St. Mary's Orphan Home, and bestowing such custody upon the petitioner Sarah Ann Thomas until such children arrive at the age of discretion, or until the further order of the court, and requiring said St. Mary's Orphan Home to forthwith deliver said children over to the said Sarah Ann Thomas. From this decree the said Eugene C. Hernandez and St. Mary's Orphan Home have taken their appeal to this court at the present pending term, and assign among other errors the following: That the court below erred in permitting the filing of the petition of Sarah Ann Thomas in intervention in the former Divorce suit between Eugene C. Hernandez and Madge G. Hernandez. (2) In overruling the demurrer of the respondent Eugene C. Hernandez to said petition. (3) That the court erred in awarding the custody of said two children to the petitioner Sarah Ann Thomas. (4) That the court was without authority of law to deprive a father of his minor children and from deciding and determining in whose care and custody such children should be placed in the absence of any allegation or proof that they were placed in the care and custody of improper persons.

*Alex St. Clair-Abrams*, for Appellants.

*John L. Doggett*, for Appellee.

TAYLOR, J. (*after stating the facts.*) The court below erred in its order or decree vacating and setting aside its former order or decree made on June 1st, 1903, consigning said two minor children Blanche and Edith Hernandez to the custody and care of St. Mary's Orphan Home, and turning them over to the custody and control of the

appellee Sarah Ann Thomas. While we doubt the propriety of the proceeding followed here, that of permitting a stranger to the proceedings to intervene by petition in a formerly pending divorce suit that had long prior thereto passed to a final decre of divorce between the parties husband and wife, and in which the divorced wife had died subsequent to the decree of divorce but prior to such intervention by petition, yet inasmuch as it is one of those unfortunate contests over the custody of children where considerable rancor is manifest, we deemed it best, under all the circumstances of the case to pass over the technicalities of procedure and to dispose of the case upon its merits. Practically the only grounds upon which the petitioner Sarah Ann Thomas bases her alleged claim and right to the custody of these two infants, aside from the fact that she is their maternal grandmother, are the alleged will made by the mother of said infants bequeathing them to the custody of their said grandmother and to their aunt, and that prior to his consignment of them to the care and custody of St. Mary's Orphan Home their father Eugene C. Hernandez had promised or agreed to give them to her, the said Sarah Ann Thomas, whenever he found that he was unable to care for them equally as well as she their said grandmother had formerly cared for them; and that prior to their consignment to said Orphan Home their father had neglected them and permitted them to run at large upon the streets in a filthy and ragged condition where they contracted vicious habits and speech.

In so far as the alleged will of the mother Madge G. Hernandez is concerned, undertaking to bequeath or devise the care and custody of said children to their grandmother and aunt, such will was a nullity and conferred no claim or right upon said grandmother and aunt to the

custody of said children. Our statute, section 2086 Revised Statutes, like its predecessor in England, 12th Charles II, Chap. 24, Sec. 8, confers upon the father alone the power to appoint a testamentary guardian for his child by last will and testament or by deed. No such power is conferred upon the mother by our statute, and she has no such authority or right from the common law or from any other source. *Ex parte* Bell, 2 Tenn. Chy. 327; Ingalls v. Campbell, 18 Oregon 461, 24 Pac. Rep. 904; *Ex parte* Edwards, 3 Atkyns, 519.

As to the alleged promise or agreement by Eugene C. Hernandez, the father, to transfer the custody of said children to their grandmother in the event he found himself unable to care for them as well as she had done, such agreements are against public policy, and are not, in cases circumstanced like the one under discussion, enforceable or binding upon the parties. Regina v. Smith, 16 Eng. L. & Eq., 221; Schouler's Domestic Relations (5th ed.) Sec. 251, and authorities there cited. But even if this were not true, there has been no such exhibition of want of ability on the part of Eugene C. Hernandez, the father, to have his said two children properly cared for, as would justify an enforcement of any such promise or agreement on his part. On the contrary it is shown by the uncontradicted proofs in the case, that he had and has the ability to procure their admission to and maintenance in a permanent home where they have every educational advantage, secular, moral and religious, where they are well clothed and fed and are surrounded in their daily lives by all of those refining Christian influences that tend to make of them virtuous, law abiding and useful citizens.

As to the charge that the father, Eugene C. Hernandez, had neglected said children and allowed them to run wild

about the streets in a ragged unkept condition, where they had contracted vicious habits and speech, the evidence is conflicting and about evenly balanced as to whether such a condition of affairs did not exist with said children prior to their father's taking charge of them while they were in the custody of their mother and grandmother, and whether the same condition of neglect did not continue after their father took charge of them—but, however this may be, the undisputed proof shows that their father had voluntarily put a stop to such condition of neglect, if it existed on his part, prior to the institution of this proceeding by voluntarily placing them in the care of the Sisters in charge of the St. Mary's Orphan Home, where he and their other relatives have free access to them at all times, and where their every necessary want is properly supplied, and where their every welfare, educational, physical, moral and religious is carefully and constantly looked after, and where they have been weaned from the vicious habit of roaming the streets.

We have held in Miller v. Miller, 38 Fla. 227, 20 South. Rep. 989, in accordance with the prevailing rule in the American courts, that in awarding the custody of children the paramount consideration is the welfare of the child rather than the technical legal right of the parent. While this is true, yet the court should not lightly and without good cause invade the natural right of the parent to the custody, care and control of his infant child. No sufficient cause has been shown here for depriving this father of the right to the custody and control of these children and of the right to dispose of them for their welfare as he has done. It is not alleged or proved that he is a man of vicious or immoral character or in anyway unfit to have the custody and control of said children. This being

true he, as their father, has the legal right to their custody and control and to have them educated in any religious faith that he sees proper, whose tenets do not inculcate violation of the laws of the land. Villareal v. Mellish, 2 Swanst. 533; In re Anne Turner, 19 N. J. Eq. 433. Or as it is properly expressed in Verser v. Ford, 37 Ark. 27: "As against strangers, the father, however poor and humble, if of good moral character and able to support the child in his own style of life, cannot be deprived of the privilege by anyone whatever, however brilliant the advantage he may offer. It is not enough to consider the interest of the child alone. And as between father and mother, or other near relation of the child, where sympathies of the tenderest nature may be confidently relied on, the father is generally to be preferred." The grandmother here, Sarah Ann Thomas has shown no valid claim or right to the custody or control of these two children, and if for no other reason, the evil influences to which they would inevitably be subjected in the disreputable locality in which the proofs undisputedly show her to have continuously maintained her residence, renders it improper that she should have such care and custody.

The decree of the court below is reversed with directions to have said two children returned to the custody and care of St. Mary's Orphan Home under the provisions of the decree heretofore made on June 1st, 1903, and that the petition of the appellee Sarah Ann Thomas herein be dismissed. The appellee Sarah Ann Thomas to be taxed with the costs of this appeal.

HOCKER and PARKHILL JJ. concur.

SHACKLEFORD, C. J. and COCKRELL and WHITFIELD, JJ. concur in the opinion.