[Civil No. 1730.  Filed November 28, 1919.]

[184 Pac. 1005.]

## MONTE HARPER, Appellant, v. DEVELLO TIPPLE, Guardian of the Person and Estate of MARY ELIZABETH HARPER, a Minor, Appellee.

1. PARENT AND CHILD — CUSTODY OF CHILD.—A father is entitled to his minor child as against the maternal grandmother, notwithstanding the mother's dying request that the grandmother have the child, since the mother was not vested with testamentary disposition of the child during the lifetime of the father, and could not give the child away without his consent.

2. PARENT AND CHILD—FATHER'S PROMISE NOT TO TAKE CHILD FROM GRANDMOTHER INVALID.—A father's promise not to separate his minor child from the grandmother was void, as against public policy, for a father cannot make a valid and irrevocable contract, which

---

1. Right of mother to make testamentary disposition of child, note, 7 Ann. Cas. 450.

1. Nature of father's right to custody of child, note, 2 Am. St. Rep. 183.

1. Validity and essentials of contract transferring parental custody, note, 88 Am. St. Rep. 869.

2. Validity of contract by parent transferring custody of child, notes, 6 Ann. Cas. 939; 11 Ann. Cas. 217; Ann. Cas. 1913B, 886.

relieves him from the legal obligation to maintain, support, and educate his minor child.

3. GUARDIAN AND WARD—APPOINTMENT OF GUARDIAN IN DISCRETION OF COURT.—The statute relating to appointment of guardian for minor child vests in the appointing court or judge a very large discretion in the selection and appointment of a guardian; the paramount consideration being the welfare of the child rather than the technical legal right of the parent.

4. GUARDIAN AND WARD—PARENT'S RIGHT TO CHILD EXCEPT WHERE DELINQUENT.—The court, in appointment of a guardian, should not invade the natural right of the parent to the custody and care of an infant child, except upon a clear showing of delinquency on the part of the parent.

5. GUARDIAN AND WARD—PRESUMPTION IN PROCEEDINGS FOR APPOINTMENT OF GUARDIAN. — In guardianship proceedings, involving father's claim to child as against parents of deceased mother, it will be presumed that the father's second wife is a good woman, and will do all her duty demands that she should do to assist her husband in the nurture, care, teaching, and protection of the child.

6. APPEAL AND ERROR — REVIEW OF CONFLICTING EVIDENCE.—Where evidence is conflicting, or where different conclusions may be drawn therefrom, the Supreme Court will not interfere with the judgment of the lower court.

7. GUARDIAN AND WARD—PRESUMPTION OF FATHER'S COMPETENCY TO CARE FOR CHILD.—It will be presumed on guardianship proceedings that a father is competent to have the care and custody of his child, in the absence of any affirmative showing to the contrary.

8. PARENT AND CHILD—ABUSE OF DISCRETION IN TAKING CHILD FROM FATHER.—Where the father was an industrious man, of moral character and exemplary habits, had a well-paying business, pleasant home and family relatives, and had a deep affection for his infant child, the court abused its discretion in taking child away from her father and placing her in maternal grandparents' care, though the father had remarried subsequent to the death of child's mother, and had promised the grandmother not to take the child from her.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Reversed.

### STATEMENT OF FACTS.

Devello Tipple, the maternal grandfather of Mary Elizabeth Harper, a minor child, applied to the superior court of Maricopa county for appointment as guardian of the person and estate of the minor, al-

leging in his petition, among other things, that the minor was the child of his daughter, Fannie Fern Harper, and her husband, Monte Harper, and that the child was about five and a half years of age; that about the 1st of May, 1915, the mother of the child, who was then suffering from tuberculosis, came to his home with her child and there remained until March 10, 1916, when she died, and that at the time of her death she gave the child to the petitioner and his wife to care for, raise, and nurture so long as they lived; that the father of the child, Monte Harper, was temporarily absent at the time of the death of his wife, the mother of the child; and that upon his return, very shortly thereafter, he promised the petitioner and his wife that they should always have the child. It is further stated in the petition that the father of the child possesses no means whatsoever with which to maintain or care for the child, and that he is not an industrious man, and that he is not a fit or proper person to have the charge, custody, or control of the child. It is also alleged in the petition that the father of the child remarried in December, 1917, and that in November, 1918, the father requested the petitioner and the petitioner's wife to allow him to have the child for a short visit, to which they consented, but that thereafter the father refused to return the child to the possession of the petitioner and his wife, and now claims the right to keep the child in his custody and under his control. It is also alleged that it is for the best interests and welfare of the child that the petitioner should be appointed her guardian. The estate of the child is alleged to consist of a savings bank account of the value of about twenty dollars and four baby bonds of the value of about five dollars each.

Monte Harper, the father of the child, opposed the application of the maternal grandfather for appointment as guardian. After hearing the evidence *pro*

and *con* on the application, the court found that all the allegations of the petition were true, and thereupon entered an order appointing Devello Tipple guardian of the person and estate of the said minor child, Mary Elizabeth Harper. The father, Monte Harper, brings this appeal, and seeks to review the order of the lower court.

Mr. W. L. Barnum, for Appellant.

Messrs. Alexander & Christy, for Appellee.

BAKER, J. (After Stating the Facts as Above.)— We have in this case a contest between the father and the maternal grandfather over the custody and care of a minor child and her estate. As to the estate of the child, it is so small and inconsequential that it may be dropped out of sight at once. The case is one of a delicate nature, and it may be impossible to extricate the parties from the contest without disappointment and suffering somewhere; but the voice of nature, which declares that the father is the natural guardian of his minor child, cannot be silenced. "The law does not fly in the face of nature, but rather acts in harmony with it." *Lamar* v. *Harris,* 117 Ga. 997, 44 S. E. 868.

It is disclosed by the evidence that the mother of the child, shortly before her death, expressed the wish that the grandmother should take the child and care for her during the grandmother's life, and that the father, shortly after the death of his wife, the mother of the child, stated substantially that he would never think of parting the child from its grandmother as long as the grandmother lived. No one can consider the request of the dying mother without a sincere wish that such a request could be legally enforced. But such is not the case. Under the law, the mother was not vested with the testamentary disposition of the child during the lifetime of the father. Neither

could she give the child away without his consent. *Hernandez* v. *Thomas,* 50 Fla. 522, 111 Am. St. Rep. 137, 7 Ann. Cas. 446, 2 L. R. A. (N. S.) 203, 39 South. 641; *Ingalls* v. *Campbell,* 18 Or. 461, 24 Pac. 904.

There is a striking resemblance between the facts in the instant case and the case of *Miller* v. *Wallace,* 76 Ga. 479, 2 Am. St. Rep. 48. That case, like this, was a contest between the father and the maternal grandparents of a minor child. It appeared that the mother of the child, shortly before her death, expressed the wish that her mother and father should take, care for, and raise her child, and that the father of the child stated that, as the wife wanted her mother to have the baby, she should do so. The father, subsequently, by strategy gained possession of the child, and the grandparents brought *habeas corpus.* The trial court awarded the child to the grandparents, but on writ of error to the Supreme Court of the state the judgment was reversed, and it was held, substantially, that the facts did not authorize the award of the child to the grandparents. To the same effect are the cases of *Looney* v. *Martin,* 123 Ga. 209, 51 S. E. 304; *Sharpe* v. *Banks,* 25 Ind. 495; *Parker* v. *Wiggins* (Tex. Civ. App.), 86 S. W. 788.

It is true that there is positive evidence in the record that the father promised the grandmother that he would not separate the child from her during her lifetime. It appears that this was a mere volunteer promise, made on the part of the father to gratify the love and accommodate the wishes of the grandmother. Apparently, the parties did not consider that they were making a contract about the custody of the child, and even if what was said could be held to be a contract, it would nevertheless be void as against public policy; for the father cannot make a valid and irrevocable contract which relieves him from the legal

obligation to maintain, support, and educate his minor child. Spencer on the Law of Domestic Relations, § 481; *Brooke* v. *Logan,* 112 Ind. 183, 2 Am. St. Rep. 177, 13 N. E. 669; *Weir* v. *Marley,* 99 Mo. 484, 6 L. R. A. 672, 12 S. W. 798; *Lipsey* v. *Battle,* 80 Ark. 287, 97 S. W. 49.

The conclusion of the trial court must have been reached upon the theory that the welfare of the child would be best promoted by placing her in the custody of the grandparents, because of the incompetency of the father. It is manifest that the statute vests in the appointing court or judge a very large discretion in the selection and appointment of a guardian; the paramount consideration being the welfare of the child, rather than the technical legal right of the parents. While this is true, yet the court should not invade the natural right of the parent to the custody and care of an infant child, except upon a clear showing of delinquency on the part of the parent. *In re Forrester,* 162 Cal. 493, 123 Pac. 283; *Hernandez* v. *Thomas, supra.* The breaking of the ties that bind father and child to each other can never be justified without the most solemn and substantial reasons, established by plain proof. In any form of proceeding the sundering of such ties should always be approached by the courts "with great caution and with a deep sense of responsibility." *State* v. *Richardson,* 40 N. H. 274, 275. Ordinarily the father is entitled to the custody of his minor child. This was the rule of the common law (2 Kent, Commentaries 205; Schouler's Domestic Relations, pars. 245–248; Spencer on the Law of Domestic Relations, § 479), and this rule of the common law is reaffirmed by the statute in this state:

"The father or the mother of a minor child under the age of fourteen years, if found by the court competent to discharge the duties of guardianship, is entitled to be appointed a guardian of such minor

child, in preference to any other person. . . . ''   Civ.
Code 1913, par. 1110.

The father in this case proved himself to be a
moral man, of exemplary habits, and industrious.   It
is shown that at the time of the trial he was conduct-
ing an automobile business, from which he was de-
riving an income of three or four hundred dollars a
month, and he is therefore in a position financially to
care for his child.   The inference to be fairly drawn
from the evidence is that he entertains a deep affection
for the child.   His love and affection for his former
wife and his family as it then existed is proven beyond
all question by the pathetic message of love which the
wife, when dying, requested the grandmother to con-
vey to her husband.   She expressed her love for her
husband just as she was passing away.

True, since the death of his former wife, the father
has contracted a second marriage; but shall it be said
that he thereby forfeited his right to the custody of
his child?   There is nothing in the record derogatory
to the character of the second wife, and it is to be
presumed that she is a good woman, and that she
will do all that duty demands that she should do to
assist her husband in the nurture, care, teaching, and
protection of the child.   There is no showing that the
father is a man of vicious habits or immoral char-
acter.   We have, then, a case where the father is a
man of good habits and morals, with a lucrative and
growing business, and his home and family relations
pleasant and happy.   He is in possession of the child.
We take it that the device or strategy, if it can be so
called, by which the father obtained possession of the
child from the grandmother (promising to return the
child after taking it away for a short visit, and fail-
ing to do so), was suggested rather to avoid a pain-
ful scene and angry controversy than for any other
purpose, and that it would be going too far to infer
from what then occurred that the father proved him-

self to be an unsuitable and unfit person to have the custody of his child. Certainly, under the circumstances, we can find no warrant in law for taking the child away and placing her in the grandparents' care. We do not for a moment question the affection and love of the grandparents for the child, nor their ability and disposition to cherish and care for her; yet it cannot be overlooked that they are already in the decline of life, and can scarcely hope to survive through all the years of the child's minority.

The petitioner in this case recognized the necessity of affirmatively showing the incompetency of the father, as proven by the allegation in his petition that the father was an unfit person to have the custody of the child; but we do not think that the evidence sustains the allegation. We do not think that the evidence affirmatively shows that the father is an unfit or incompetent person to have the custody of his own child. We are not unmindful of the rule that where the evidence is conflicting, or where different conclusions may be drawn from the evidence, we will not interfere with the judgment of the lower court. We have, however, considered the evidence in the light of the rule that it will be assumed that a father is competent to have the care and custody of his child, in the absence of any affirmative showing to the contrary.

We conclude that the cautious, circumspect, and humane judge of the lower court was mistaken in the exercise of his discretionary powers, and that for the lack of sufficient evidence to support the finding that the father was incompetent the decree appealed from must be reversed; and it is so ordered.

CUNNINGHAM, C. J., and ROSS, J., concur.