[Civil No. 3691. Filed December 21, 1936.]

[63 Pac. (2d) 198.]

In the Matter of the Application of DOROTHY WINN, Formerly DOROTHY WILKY, for a Writ of Habeas Corpus. GEORGE L. WILKY and MARTHA WILKY, His Wife, Appellants, v. DOROTHY WINN, Formerly DOROTHY WILKY, Appellee.

Mr. L. J. Cox and Mr. W. L. Barnum, for Appellants.

Mr. Austin O'Brien, for Appellee.

McALISTER, J.—This is an appeal by George L. Wilky and Martha Wilky, his wife, from a judgment of the superior court in a *habeas corpus* proceeding granting the petitioner, Dorothy Winn, the care, custody and control of two minor children.

Dorothy Wilky and Virgil Wilky, it appears from the record, were married in June, 1928, and the two children in question, Robert and Beverly Wilky, were born to them and at the time this petition was filed

in February, 1935, were four and five years of age respectively. On the 8th day of July, 1933, the petitioner, Dorothy Winn, formerly Dorothy Wilky, filed in the Superior Court of Maricopa County a complaint for a divorce from Virgil Wilky on the ground of nonsupport and in it alleged that she was unable, and the father, Virgil Wilky, an improper person to have the care and custody of the children, and asked the court to make such disposition of them as was fit in the premises. The summons was served the same day and on August 2, 1933, no answer having been filed, default was entered and five days later a decree divorcing the parties rendered. The court did not, however, dispose of the custody of the children in that suit but incorporated in its decree the statement that due to the fact that they were then in California out of its jurisdiction "the court can make no disposition thereof at present."

The petition, filed February 5, 1935, alleges that on July 8, 1933, the day the summons in the divorce action was served, the father removed the children to California surreptitiously and by force and made no appearance in that suit, and that thereafter the respondents moved to California and remained there with the father and the children until about the 1st of November, 1934, when they returned to Phoenix with the latter; that some time thereafter the petitioner discovered that the children were again in Maricopa county and made several attempts to visit them and secure their custody but the respondents would not permit her to do either; that petitioner is a fit and proper person to have such care, custody and control and is entitled thereto, but that the respondents restrain and conceal them from her. The court ordered issued a writ of *habeas corpus* directed to the respondents commanding them to bring the children into court on February 6, 1935, and show the cause

of their detention and do whatever should be decided concerning them.

In their answer to the writ the respondents allege that it was agreed at the time of the separation of the mother and father that they should have the possession and care of the children and that on July 8, 1933, they were given such care, custody and control by the petitioner and Virgil Wilky; that since then they have endeavored to promote the best interest of the children, and that the petitioner knew at all times thereafter where they were and corresponded with their father and the respondents. They allege also that prior to the 8th day of July, 1933, the petitioner abandoned the children and left them solely in the care of their father and these respondents and deny that they surreptitiously or by force removed them from the state of Arizona. They aver further that it would be to the best interest of the children that their care, custody and control remain in the respondents who are persons suitable therefor, and deny that the petitioner is a fit and proper person in whose care and custody to place them.

At the close of the hearing the court took the matter under advisement and on April 15th made the following findings: That petitioner, the mother of Robert and Beverly Wilky, is a fit and proper person to have their care, custody and control; that there has been no showing of abandonment of them on her part, but that she surrendered their custody to the respondents because of exigencies over which she had no control and for their benefit and welfare; that the respondents are the paternal grandparents, the grandfather being seventy years of age and the grandmother sixty-three, and that the best interest of the children will be subserved by granting their care, custody and control to their mother.

From these findings the court stated the following conclusions of law:

"(1) That the Petitioner herein, as a matter of law, is entitled to the care, custody and control of her said minor children, Beverly Wilky, now of the age of five years, and Robert Wilky, now of the age of four years.

"(2) That the petitioner herein, being the mother of the said children involved in this matter, is entitled to the care, custody and control of said children, as against respondents.

"(3) The court finds that under the law of Arizona the parent of the children, who is a fit and proper person, is entitled to the care, custody and control of said children as against all others. *Harper* v. *Tipple,* 21 Ariz. 41, 184 Pac. 1005."

Pursuant to the findings and conclusions the court rendered a decree granting the petitioner the care, custody and control of the children and directing the respondents to deliver them to her immediately upon receipt of the judgment. The respondents promptly moved for a new trial but this was denied and they have brought that order and the judgment here for review.

A large number of errors are assigned but discussed under fewer propositions of law. It is necessary, however, as we view it, to consider only one of these and that is that where, at the time of the separation and divorce, the custody of minor children was left with the father and paternal grandparents, the father had equal rights with the mother in determining the custody of the children in a proceeding in *habeas corpus* by the mother to recover their custody, unless evidence was shown that the best interests of the children would be subserved by taking the custody from the grandparents. This statement of the law, if correct, applies to the facts of this case. The finding of the court was that the petitioner surrendered the cus-

tody of the children to the grandparents because of exigencies over which she then had no control and for their benefit, and the record discloses that from that time, about July 1, 1933, until the decision in this action on April 15, 1935, they were in the custody of the grandparents and the father. The latter, aided by his parents, had their care and custody personally from the time the petitioner left him on July 1, 1933, until the grandmother returned to Arizona with them on November 1, 1934, and from then until the date of the decree through the agency of his parents.

█ The writ of *habeas corpus* was directed to the respondents and at the hearing the question inquired into was whether they or the petitioner was entitled to the care and custody of the children. While the court found that the petitioner was a fit and proper person to have such care and that the best interests of the children would be subserved by placing them with her, the conclusions of law disclose that in granting her their custody, and directing the respondents to deliver them to her immediately upon receipt of the judgment, the court was guided, in part at least, by the decision of this court in *Harper* v. *Tipple, supra.* After stating in conclusions one and two that the petitioner, as a matter of law and as the mother of the children, is entitled to their custody as against respondents, the court concludes in number three ''that under the law of Arizona the parent of children, who is a fit and proper person, is entitled to the care, custody and control of said children as against all others,'' and cites as a basis therefore *Harper* v. *Tipple.*

██ The language quoted is, generally speaking, a correct statement of the law and was especially applicable to the facts the court had before it in that case. The question there was whether the father of a minor child or its maternal grandparents to whom its care, control and nurture had been given by the

mother just before her death in their home was entitled to its custody. There could have been no question but that this right was in the father, the only living parent, as against everyone else, after it had been shown that he was a fit and proper person, because nothing is truer than the statement in that decision that "the voice of nature, which declares that the father is the natural guardian of his minor child, cannot be silenced. 'The law does not fly in the face of nature, but rather acts in harmony with it.' " The court should never, unless the unfitness of the parent clearly appears, refuse to recognize the natural right of such parent to the care and custody of his or her minor child. Even though the statute does vest in the court or the judge a large discretion in the appointment of a guardian or in the awarding of the custody of a minor child and makes its welfare, instead of the technical right of the parent to its care and custody, the paramount consideration in determining the question, the court should not, as the opinion in *Harper* v. *Tipple, supra,* states,

"invade the natural right of the parent to the custody and care of an infant child, except upon a clear showing of delinquency on the part of the parent. *In re Forrester,* 162 Cal. 493, 123 Pac. 283; *Hernandez* v. *Thomas* [50 Fla. 522, 39 So. 641, 111 Am. St. Rep. 137, 7 Ann. Cas. 446, 2 L. R. A. (N. S.) 203,] *supra.* The breaking of the ties that bind father and child to each other can never be justified without the most solemn and substantial reasons, established by plain proof. In any form of proceedings the sundering of such ties should always be approached by the courts 'with great caution and with a deep sense of responsibility.' "

This statement, though made by the court in deciding a contest between the father and the parents of his deceased wife as to the custody of their minor child, would undoubtedly have been just as

applicable if the mother had been the living parent and had been seeking the custody of the child as against its paternal grandparents to whom its father had given it under the same circumstances, since the parent of a minor child, who is a fit and proper person, whether the father or the mother, is, ordinarily, entitled to its custody above everyone else. But where the contest is one between the parents this rule has no application because the father and the mother, each being a fit and proper person, are equally entitled to the custody of their minor children; at least the strict common-law rule favoring the father in this respect, *Harper* v. *Tipple, supra,* has not been modified by giving the mother the preference, though it has been relaxed in modern judicial decisions so that the court may exercise its discretion and award custody according to the circumstances of the particular case. 46 C. J. 1225, par. 10. In doing this the paramount consideration as between the parents, as well as between either or both of them and another, is always the welfare and the best interests of the child.

In reaching its conclusion, however, in this case, the court evidently acted upon the theory that the contest was one solely between the petitioner and the respondents and that their rights only to the custody of the children were involved. The father's interest in them, it was evidently felt, was not before the court for consideration, since he was not a party to the proceeding. As we view it, however, the case was in reality one between the mother and the father and should have been treated as such, and even though he was not nominally a party he was, for the purpose of this particular proceeding, in court through the respondents who were his agents in caring for the children. He had placed Beverly and Robert in their charge on November 1, 1934, when their legal custody

was in him and had been for sixteen months, or since July 1, 1933, the day the petitioner left him and them in the home of respondents. Under these circumstances his authority to arrange with his parents to care for and maintain them was clear and as long as the father lived and the arrangement stood, the principle that she was entitled to their custody as a matter of law against the respondents and every other person had no application. *In re Thompson,* 77 Mont. 466, 251 Pac. 163, 166, the court had before it a very similar situation. The father and mother of a five year old boy had separated in Vancouver, B. C., and the father, at the mother's direction, had left the home and taken the child with him, later placing it in the care and custody of his sister and her husband, Ella Bruckert and W. A. Bruckert, at Red Lodge, Montana. About two years later the mother, after several unsuccessful efforts to visit or secure the child, went to Montana from her home in Portland, Oregon, and sought, through a writ of *habeas corpus,* to secure its custody from the Bruckerts and one of her main contentions was that they had no legal right to its custody as against a parent and were not in a position even to question the latter's competency to care for it. In disposing of this contention the court said:

"Under the provisions of section 5834, 'the father and mother of a legitimate unmarried child are equally entitled to its custody.' At the time the father placed the child with the Bruckerts, in order that he might have a home and be properly cared for, the father's custody of the child was legal. His arrangement with the Bruckerts for the care and maintenance of his son was authorized, and their custody and control of the child under such arrangement were lawful. They became, in fact, the agents of the father in caring for the child. When the petitioner made an attempt to take the child from them, as such agents, they were warranted in resisting, and it was competent for the

court to permit an investigation into any facts which would have been available to the father if the attempt had been made to take the child from him, since, under such circumstances, the contest was in reality one between the petitioner and the father.''

The only theory, therefore, upon which the court could have taken the children from the grandparents and the father and given them to the petitioner was that it would promote their welfare and best interests to do so, and if the record disclosed that the court reached its conclusion solely upon this ground and the facts supported it, it would be necessary to uphold its action. But, inasmuch as it appears that the court applied to the facts an erroneous principle of law, it is impossible to know just what guided it, though the evidence is such that it seems certain that this principle was an important, if not a controlling, factor in arriving at its decision. No one can read the evidence, however, and fail to be impressed with the fact that the father and the respondents were, to say the least, persons equally as fit and proper as the petitioner to have the custody of the children. In fact, their fitness was not contested but specifically admitted at the trial and, though the question—in whose custody would the welfare of the children be best subserved?—was peculiarly one for the trial court, we think it equally clear, notwithstanding its answer in favor of the petitioner, that the evidence supporting that view is not such that the best interests of the children demanded that the father's natural rights in them receive no recognition at all. These should have been preserved in so far as it was possible to do so in a *habeas corpus* proceeding, and while it may be that the relief the facts disclosed was appropriate could not have been quite so complete as it could had the court been awarding the custody of the children as an incident to the decree of divorce, yet it had the

power and the situation demanded that it be more adequate, for there is certainly nothing in the evidence showing that the welfare of the children would be best promoted by the failure to make it so. While the object of the writ of *habeas corpus* is to set at large persons illegally restrained of their liberty, whether infants or persons of full age, yet when that writ is used to invoke the court's equity powers to determine the custody of a minor child, it is not the personal liberty of the child but its welfare only that is involved, because the infant, for obvious reasons, is presumed to be in the custody of someone during its minority, and this should be decided in the way the circumstances of the case show will accomplish that result. In 29 C. J. 112 is found this language:

"In *habeas corpus* proceedings between parents, the court may so qualify its award as to preserve the natural rights of the unsuccessful parent, if this can be done consistently with the welfare of the infant, and, although the court awards the custody of the infant to one party, it may grant to the other the right to visit the infant at such times and places as may be suitable and convenient."

 If convinced that the best interests of the child would be subserved not merely by giving visitorial rights but by dividing its custody between the parents for definite periods of time, though it is not always that such an arrangement is wise, the court's power to do so is the same as it is to give it to one parent permanently. But such a decree can be modified only in a new *habeas corpus* proceeding, because the statute does not authorize the court to retain jurisdiction for this purpose, as it does in disposing of its custody upon the dissolution of the marriage tie.

For the foregoing reasons the judgment is reversed and the case remanded with direction that any future action be consistent herewith.

LOCKWOOD, C. J., and ROSS, J., concur.