No. 34,948

In the Matter of JOHN CRISS WINDELL, a Minor, by FRED WINDELL, His Father and Next Friend, and FRED WINDELL, Individually. (FRED WINDELL, *Appellant*, v. W. L. BELL et al., *Appellees*.)

(107 P. 2d 708)

Opinion filed December 7, 1940.

*T. D. Relihan* and *A. W. Relihan*, both of Smith Center, for the appellants.
*J. S. Parker* and *C. E. Birney*, both of Hill City, for the appellees.

The opinion of the court was delivered by

HOCH, J.: Many important matters are brought to this court. Most of them relate to property, to the material things which we humans may possess. But here is an appeal that is freighted with a deeper value. It deals not with what we have, but with what we are. It concerns a baby.

John Criss Windell was twelve days old when his young mother died. The bereft father, Fred Windell, whose work and circumstances then made it difficult for him to care for the child, delivered him into the welcoming hands of the maternal grandparents. Of the tender, budding, anxious, entwining days that followed, the record is silent. Of this, in the name of a common humanity, we take judicial notice.

When the child was something less than two years old the father, having remarried, desired to have his child back in his own home

then reëstablished. The grandparents refused to surrender the child, maintaining that the father had promised that he would never attempt to regain custody of the child if they would take him and rear him as their own. This the father denies. Charges and counter charges followed, but they do not determine the issue here, and we have no mood for their recital. On the human side it boils down to this: the father and his wife wanted the baby, the grandparents wanted the baby, and whatever their differences, they all had one great thing in common—they all loved the baby.

The law stepped in. In an action in habeas corpus—big words over such a little bundle—the father asked the court to require the grandparents to surrender custody of his child. The grandparents answered, setting up the alleged oral contract, and asserting that the father and his wife were not fit persons to have the child. The petitioners replied, denying the averments of the answer, and alleging various derelictions of the grandparents in their care of the child. In the absence of any supporting record brought here, we prefer to believe that these recriminations were in most part only the bitter by-products of an unhappy human drama. In any event, whatever else may be said about it, the next act reveals that neither side really thought the other side so very bad after all. This must be so, since each side consented to extended custody of the child by the other.

Thus reads the journal entry of judgment, entered on February 14, 1939:

"Thereupon, by agreement of parties, in open court the following order and judgment is rendered:

"It is ordered and adjudged that Fred Windell, the father of the minor John Criss Windell, is entitled to the custody of said minor child and it is ordered that the respondents forthwith surrender the custody of said John Criss Windell to the said Fred Windell. It is further ordered that the costs of this action be taxed to defendants, Mr. and Mrs. W. L. Bell.

"It is further ordered that any claim the said defendants Mr. and Mrs. W. L. Bell may now have for the support, care and maintenance of said John Criss Windell is hereby canceled and in consideration thereof said defendants shall be entitled to the visitation of said minor, in their home for periods aggregating two months during each summer vacation season, neither party to teach said child disrespect for the other party."

Succeeding chapters of the story may be briefly told. The trouble was not over. After having custody for about three months, the father asked to have the judgment modified to give him complete and continuous custody of the child, then about three years

of age. He alleged that he was "in every way qualified to look after, maintain, care for, properly educate and rear said minor child"; and that "applicant's wife likewise stands ready and willing to bestow upon said child, and in fact has, since said child has been in the custody of this applicant, bestowed upon said minor the love, interest, care and affection that a mother would naturally have for her child." Various alleged facts were set out in support of the contention that the alternating custody between the father and the grandparents was harmful to the welfare of the child. The father offered to pay the grandparents the reasonable amount, if any, found due for support and maintenance provided by them. The court declined to modify the judgment except to add a provision fixing June 1 of each year for beginning the annual two months' legal custody by the grandparents.

On May 13, 1940, the father filed a motion to vacate that part of the judgment giving custody of the child to the grandparents for two months every year. It was asserted that such part of the judgment is void, being contrary to public policy, and that it is "ineffective and unenforceable." If that part of the judgment attacked by the motion is contrary to public policy, it is void under long established law, and if it is void any interested party has a right to have it vacated at any time under specific provision of our statutes (G. S. 1935, 60-3009).

The judgment under attack is an amazing one. After awarding custody of the child to the father, it provides that "*any claim the said defendants . . . may now have for the support, care and maintenance* of said John Criss Windell *is hereby canceled and in consideration thereof said defendants* shall be entitled to the *visitation of said minor in their home*" for two months during every summer. (Italics ours.) In other words, the legal custody of a child is made the coin with which claims are to be paid. Of course, such an agreement is contrary to public policy and cannot stand. It would be unenforceable as between the parties and cannot be sanctified by judicial confirmation. (*Foulke v. People,* 4 Colo. App. 519, 36 Pac. 640, and cases therein cited.) Children are not to be tendered across a bargaining counter. They are not to be pledged as security. They are not recoverable in actions in replevin. We must believe that the trial court made inadequate examination of the specific provisions of the journal entry submitted for approval as an agreement between the parties.

Even if we were able to eliminate the baby-bartering provisions and retain merely a provision for dual and alternating custody, the father would still be entitled to have such provision set aside. By the judgment confirming his natural right of custody he has been found to be a fit and proper person to have it. That being true, he is entitled to custody regardless of any prior agreement otherwise. An agreement by a father to leave his minor child with some other person lacks mutuality and is revocable by him. Conversely, for reasons based on public policy, he cannot make a valid and irrevocable contract which relieves him of his legal obligation to support his child.

Appellees cite cases in which this court has affirmed judgments awarding the custody of children to persons other than parents. The cases are applicable where the parents are not fit and proper persons to have the custody of their children. But it cannot be said on this record that the father is not a fit and proper person and entitled to custody. The court has found otherwise. If he and his wife are proper persons for ten months of each year they are certainly proper persons for the remaining two months. The principles of law herein stated are amply supported by decisions of this and other courts. We shall cite only a few of them: *Tucker v. Finnegan*, 139 Kan. 496, 32 P. 2d 211, and cases therein cited; *Harper v. Tipple*, 21 Ariz. 41, 184 Pac. 1005; *Hernandez et al., v. Thomas*, 50 Fla. 522, 39 So. 641; *People, ex rel. Marks, v. Grenier*, 249 App. Div. 564, 293 N. Y. S. 364; *People, ex rel. Schachter, v. Kahn*, 241 App. Div. 686, 269 N. Y. S. 173; *Bullard v. Welch*, 171 Miss. 833, 158 So. 791.

In addition to the legal principles which control, it must be apparent from the standpoint of practical wisdom that a changing of legal custody, twice every year, regardless of the immediate situations of the parties, and of the circumstances affecting the welfare of the child, is an arrangement fraught with every probability of recurring friction and bad feeling.

We are not unmindful of the strong attachment, of the affection which the grandparents evidently feel toward the child, nor of the great service they rendered the father. He would be callous indeed if he were insensitive to all of this. And we venture to depart from the record to voice the hope that all reasonable visitation between grandparents and grandchild may follow, in the spirit of mutual consideration and good will.

The portion of the judgment of February 14, 1939, which awards

custody of the child to the father is clearly separable from the succeeding paragraph here in issue and will not be disturbed by the decision here made. The judgment is reversed, and the case remanded with directions to sustain appellants' motion, filed May 13, 1940, to vacate a portion of the judgment of February 14, 1939, and all subsequent orders purporting to modify it.