**PATRICK, Admrx., Plaintiff-Appellee, v. BALDRIDGE, Defendant-Appellant.**

Ohio Appeals, Second District, Fayette County.

No. 296.   Decided March 20, 1958.

Ray W. Davis, Circleville, for plaintiff-appellee.
W. S. Paxson, Washington C. H., Emory F. Smith, Portsmouth, E. S. Young, West Union, for defendant-appellant.

## OPINION

By THE COURT:

This is an appeal from a judgment of the Common Pleas Court in behalf of plaintiff in the amount of $80,000.00, entered upon the verdict of a jury.

The action instituted by Marie Patrick, Administratrix of the Estate of Irvin J. Patrick, as plaintiff, against the defendant was for damages for the wrongful death of plaintiff's decedent claimed to have been caused by defendant and was on behalf of Marie Patrick, the wife, and three children of the parties as heirs and next of kin of plaintiff.

Plaintiff charged that while her husband was serving as Game Protector of Fayette County, Ohio, under employment of the Department of Conservation, Division of Wildlife of the State of Ohio and while he was making an arrest of one, Donald Butler, for the possession of a hen pheasant and "while her decedent was taking his prisoner from the farm of defendant" the defendant pointed a loaded shotgun at plaintiff's decedent and ordered him not to take said prisoner; that while said decedent was being so assaulted and obstructed in the execution of his office, "said defendant, George S. Baldridge, wrongfully, intentionally, willfully and purposely shot and killed plaintiff's decedent, Irvin J. Patrick."

Defendant admitted the capacity of plaintiff to sue; that plaintiff's decedent was a Game Protector of Fayette County; that on the date alleged, November 15, 1955, he received a gunshot wound and thereafter denied generally the other averments of the petition and specifically denied "that he intentionally, willfully and purposefully shot said Irvin J. Patrick and says that Irvin J. Patrick was injured as a result of his own aggression in attempting to wrest defendant's shot gun from him while it was lawfully in defendant's possession."

Appellant assigns six errors:

1. Error in giving Special Charge No. 2 given to the jury before argument at the request of plaintiff.

2. Error in the rejection of evidence offered by appellant.

3. Refusal to direct a verdict for defendant at the close of plaintiff's case.

4. In failing to grant a remittitur by reducing the excessive verdict.

5. Verdict contrary to law, not sustained by sufficient evidence and
6. Other errors apparent upon the face of the record.

We will first consider the errors assigned other than the first.

The second assignment is directed to the refusal of the trial judge to permit a witness, W. R. Allen, to answer the question "How did he act there that morning?" The reference was to the action of plaintiff's decedent at about 8 o'clock on the morning of the day when Patrick was shot. The objection to the question was sustained and this answer was proffered: "If this witness were permitted to answer, he would say that Mr. Patrick was in a very bad mood at that time."

This testimony could properly have been admitted but, in our opinion, its admission was a matter for the discretion of the trial judge, and the refusal to admit it was not prejudicial. Especially is this true because witnesses were permitted to testify fully as to the mood of decedent at the time of the occurrences immediately connected with the shooting.

The third assignment questions the overruling of defendant's motion for a directed verdict in his behalf at the conclusion of plaintiff's case. This claim is predicated upon the contention that upon the testimony of the witness, Kamman, a Game Protector, who was with Patrick at the time of the arrest of Butler and the shooting of Patrick, it did not appear that the shooting was wrongful, intentional, willful or purposeful. The facts appearing at the time of the arrest and shooting, the manner of handling the gun which killed Patrick, the manner in which he was killed, the threat attributed to the defendant and his statement to the witness, Craig, were such that the jury could infer from them that the shooting was done by the defendant as alleged in the petition, if such proof was enjoined on plaintiff. The court did not err in overruling defendant's motion.

The fourth assignment is that the court erred in refusing to grant a remittitur from the amount of the verdict rendered, namely, $80,000.00.

The earnings of plaintiff's decedent were definitely established. The extent to which he provided for his wife and children was inferable from the testimony adduced. The amount of the verdict is not beyond a reasonable computation of the sum which the heirs and next of kin of plaintiff's decedent, in probability, would have received from him had he lived his normal span of life, their pecuniary loss by reason of decedent's death. These were jury questions. **Cincinnati Street Ry. Co. v. Altemeier, Admr., 60 Oh St 10, 16, 17; Chester Park Co. v. Schulte, 120 Oh St 273, 291; Karr, Admr. v. Sixt, 146 Oh St 527.**

Nothing appears in the record in the trial of the cause to indicate that the verdict was returned under the influence of passion or prejudice. The fifth and sixth assignments will be overruled without comment.

We come, then, to the one substantial and material assignment, namely, the giving of Special Charge No. 2, to the jury before argument at the request of plaintiff. This charge reads:

"If you find from a preponderance of the evidence that the plaintiff's decedent, Irvin J. Patrick, had lawfully in his custody under arrest, one Donald Butler, and that the Defendant, George Baldridge, attempted to

hinder or obstruct the said Irvin J. Patrick, from executing his duties, I charge you that as a matter of law, the said Irvin J. Patrick, had then and there the right to disarm the said Baldridge, and if you further find that said defendant shot and killed the said decedent, Irvin Patrick, then the said Defendant, George Baldridge would be liable for damages for said act."

The trial judge had also given Charge No. 1 to the jury before argument which reads:

"If you find that the discharge of the gun in the hands of the defendant was accidental, without fault of the defendant, then your verdict should be for the defendant."

Plaintiff alleged that the shooting of her decedent by the defendant was wrongful, intentional, willful and purposely done and offered testimony tending to support the averment. The trial judge in the general charge instructed the jury that to return a verdict for the plaintiff. it should find that the defendant shot decedent as alleged in plaintiff's petition, that is, wrongfully, intentionally, willfuly and purposely done, and that if they did not so find, they should return a verdict for the defendant. The Special Charge No. 2 authorizes a finding for the plaintiff, if Patrick had Butler in his custody and if defendant attempted to hinder or oppose Patrick from executing his duties and while so doing, shot Patrick. That is to say, if the jury found that Baldridge shot and killed Patrick, Baldridge was liable in damages if Patrick then had Butler lawfully in his custody and Baldridge was committing an unlawful act at the time of the shooting.

If the general charge of the court was correct, then, manifestly, Special Charge No. 2 was improper and prejudicial.

Was it incumbent on plaintiff to make proof that the killing of her decedent was done by defendant in the manner charged in the petition? Manslaughter, in Ohio, is defined (§2901.06 R. C.), as the unlawful killing of another "except in the manner described in §§2901.01 to 2901.05, inclusive, R. C."

The exception statutes, insofar as applicable, are, purposeful and malicious killing of another. Murder in the second degree, §2901.05 R. C.; and purposeful killing of another with deliberate and premeditated malice. Murder in the first degree, §2901.01 R. C.

The definition of manslaughter, as now found in §2901.06 R. C., has been in substantially the present form for more than a hundred years. Prior to that time, it was defined as "The unlawful killing of another without malice either upon a sudden quarrel or unintentionally, while in the commission of an unlawful act." Page 1724 Chase Statutes (1831).

Although the phraseology is different in the present section of the Code than formerly, it is probable that manslaughter at present includes both voluntary and involuntary manslaughter. State v. Carter, 75 Oh Ap 545; State v. McDaniel, 103 Oh Ap 163. It is evident that under the statute, §2901.06 R. C., whether or not it includes voluntary and involuntary manslaughter, as formerly defined, does make an unlawful killing manslaughter. The cases which so hold are many. Sutcliffe v. State, 18 O. 469; Nichols v. State, 8 Oh St 435; State v. Thrash, 93 Oh Ap 458;

113 N. E. (2d) 675; **Johnson v. State, 66 Oh St 59.** This last case holds, page 63 of opinion, that manslaughter may be found where the killing, if in the commission of an unlawful act, was accidental.

In testing the correctness of Special Charge No. 2, we examine the record. Beginning at page 250, defendant testified:

"Q. Mr. Baldridge, there when you were at or about the car that Mr. Patrick was riding going out the lane, did you ever point the gun at him?

"A. I didn't point the gun at nobody.

"Q. Did you ever aim this gun at Mr. Patrick or anyone else?

"A. No.

"Q. Did you, Mr. Baldridge, ever pull the trigger on this gun, to your knowledge?

"A. No, sir.

"Q. Did you ever intend at that time for this gun to be discharged?

"A. No, sir.

"Q. Do you know, Mr. Baldridge, whether or not the trigger on this gun was pulled at the time of this explosion?

"A. No, sir.

"Q. If the trigger on this gun was pulled, do you know who pulled it?

"A. No, sir.

"Q. In which direction was Mr. Patrick pulling the gun, toward himself or toward you?

"A. Toward himself.

"Q. Mr. Baldridge at any time while Mr. Patrick was taking his prisoner, that would be Donald Butler, from your farm, did you point a loaded gun at him?

"A. No, sir.

"Q. Did you, Mr. Baldridge, at any time order Mr. Patrick not to take his prisoner?

"A. No, sir.

"Q. Did you at any time there on your farm assault Irvin Patrick?

"A. No, sir.

"Q. Did you at any time object in the execution of his duties?

"A. No, sir.

"Q. Did you, Mr. Baldridge, ever intentionally fire a shot at Mr. Patrick?

"A. No, sir."

The factual development in this case from the quoted testimony and the evidence on behalf of the State presents an issue (1) If the defendant was in the commission of an unlawful act when the shooting occurred. **Sec. 2917.33 R. C.,** makes it an offense to resist or obstruct an officer in the execution of his office. Assault and battery is an offense. (2) Did the defendant do the shooting, viz., pull the trigger of his gun either accidentally or intentionally. (3) Did Patrick shoot himself. If he did, then the shooting was an accident for which the defendant could not be held responsible.

Special Charge No. 1 given before argument saying to the jury that it could find for the defendant, if the discharge of the gun was accidental,

included the qualification "without fault of the defendant." If the defendant while in the commission of an unlawful act pulled the trigger of the gun thereby shooting Patrick even though unintentional or accidental, he committed manslaughter and would be liable for damages.

So viewing the law of this case, we hold that Special Charge No. 2 as given, was a correct statement of the law. It required the jury to find that at the time of the shooting, the defendant was in the commission of an unlawful act and that he, not Patrick, shot Patrick. There was a distinct issue as to the unlawful conduct of the defendant at the time of the shooting and whether he or Patrick pulled the trigger of the gun. Defendant's witness, Everett Holcomb, testified that he was unable to discharge the gun without pulling the trigger. Even so, it may have been pulled accidentally in a scuffle between defendant and Patrick. This issue, as well as the others heretofore defined, was for the resolution of the jury which found in favor of the plaintiff on all material matters as is evidenced by the general verdict.

We find no error prejudicial to the defendant in any of the particulars assigned.

The judgment will be affirmed.

HORNBECK, PJ, WISEMAN and CRAWFORD, JJ, concur.