[Civil No. 3861. Filed October 18, 1937.]

[72 Pac. (2d) 584.]

PAUL DICKASON, Petitioner, v. SAMUEL STURDAVAN and CALISTIA W. STURDAVAN, His Wife, Respondents.

Mr. John W. Ray, for Petitioner.

Mr. George F. Macdonald, for Respondents.

McALISTER, C. J.—This is an appeal by Paul Dickason from an order quashing a writ of *habeas corpus* issued upon his petition alleging that his three minor children, Roy, Ray and Thomas Van Huston, were illegally restrained of their liberty by the respondents, Samuel Sturdavan and Calistia W. Sturdavan, and praying that they be brought into court, that the cause of their detention be shown and that their custody, following a hearing, be awarded to him.

The record discloses that the petitioner and one Octia S. Dickason, the daughter of the respondents, were divorced in March, 1931, and that the custody of their three children, Roy and Ray, twins, then five years of age, and Thomas Van Huston, three, was awarded to the mother, the father being directed to pay thirty dollars a month for their support. The mother thereupon took them to the home of respondents in whose care they remained a major portion of the time until her death on February 5, 1937, though they were living with her at Idle Hour, some miles below Tucson, when she died, and had been since July, 1936. Upon learning of her death, the respondents went immediately to Tucson, had the body shipped to

Phoenix for burial and brought the children back to Phoenix where they have since resided. Five days later the petitioner filed in the superior court of Maricopa county a petition, stating that the mother had died and left no person legally entitled or responsible for the support or maintenance of these children, and that he was willing and able to look after and care for them and was a suitable person to have such care and custody, and upon this showing the court ordered that the decree of divorce theretofore entered, directing the father to pay $30 a month into the court for the support of the children, be so modified that their care, custody and control should be in him from then on and that further payments by him for their allowance be discontinued. The respondents knew nothing of this proceeding, it being wholly *ex parte,* so when the petitioner requested that they turn the children over to him in accordance with its terms, they refused, and on March 4th thereafter he filed a petition for a writ of *habeas corpus.* It was issued and after going into the matter fully at the hearing, the court decided that the best interests of the children demanded that they remain with the respondents, declined to place them in the custody of the father, and dismissed the writ. It is this order of which the petitioner complains on this appeal.

Only two errors are assigned. The first is that the court erred in dismissing the writ of *habeas corpus* and refusing to award the custody of the children to their father. It is contended that this action was an abuse of judicial discretion under the situation confronting the court. Whether this contention is sound necessitates a little fuller statement of the facts. The petitioner and the mother of the children had been separated for two years prior to their divorce in March, 1931, and the children spent most of this period, as well as that following the decree, seven or

eight years altogether, with the respondents. The mother married again within a year following her divorce from the petitioner and thereafter lived at different places in Phoenix and the state, the children being with her some of the time, though generally with the respondents. Sometimes she would go away and leave them with her parents and at others would take them with her for a while and then bring them back. While there they had a comfortable home, were well-clothed, well-fed, went to both Sunday School and church and were happy and contented. They were, however, practically strangers to the paternal grandparents into whose home the petitioner intended to take them if awarded their custody, because they had visited there only a few times, and it appears that the children themselves were rebellious against being taken from the respondents and that they said that if they had to go away they would come back to them.

 The petitioner, the record discloses, was employed at the time of the hearing as a stenographer and payroll clerk in the WPA, Phoenix, earning $110 a month, and had been working in similar capacities for about three years. During the six years following the divorce decree he had complied fairly well with the order directing him to pay into court $30 a month for the children's support, and, according to the respondents, he saw the children when he desired, though he testified that many times he was denied this privilege. His mother and father were splendid people and would have given the children a good home, though they were both past seventy-three years of age and were little known by the children, and, in addition, the father himself had not spent a great deal of time with them since they were very small, almost infants. There was nothing against the father, the court found, except certain testimony which seriously affected his

moral character, but whether, in reaching its conclusion, this testimony was a factor is not clear. It was denied by the petitioner, but the court had the right to give it the weight he thought it should carry, and, in determining whether it acted arbitrarily in reaching its conclusion, this fact should not be overlooked.

After considering the evidence for a few days the court made the following findings:

"First, that the home of the respondents is a proper one for the children and that they are able and willing to keep them and to assist their father in providing for them;

"Second, that the home of the paternal grandparents, into which the father of the minor children intended to take them, in the event the court granted the writ of *habeas corpus,* is a good Christian home, but due to conditions that have arisen by reason of the divorce and the death of the mother of these minor children it would be injurious to said minors and develop in them a rebellious attitude, both toward their father and paternal grandparents, if they were removed from the home of these respondents and the association of their maternal grandparents and given into the custody of their father, for the reason that they are now approaching the adolescent period and have expressed to others that they would not stay with their father, and, if the court took them from these respondents, they would run away;

"Third, that the court's sole concern in actions where the custody of minor children is involved is the welfare of the children;

"Fourth, that the desires and wishes of even the father and the grandparents are not considered in this hearing, but the future welfare of the children only."

Following this, the court concluded that it was for the best interest of the children that they remain in the home of the respondents, and that the father be accorded proper visitorial rights, and pursuant thereto quashed the writ of *habeas corpus* and

returned the children to the custody of the respondents. In reaching this conclusion it cannot be said that the court acted arbitrarily, because there can be no question under all the authorities but that in answering the query, Who should have the custody of the children? the pole star by which it is led to a decision is their best interest. While it is true that a father who is a proper and fit person to care for his child, is entitled to its custody above any other person, since the ''voice of nature, which declares that the father is the natural guardian of the minor child, cannot be silenced,'' *Harper* v. *Tipple,* 21 Ariz. 41, 184 Pac. 1005, 1006, yet he must be so fit and suitable for the performance of this most important function that the court can say that the child's best interest will be subserved by placing it in his care and custody. The paramount consideration being the child's welfare, the parents' *prima facie* right to its custody is not an unconditional one. Neither does the sole fact that one is the parent and able and willing to care for it necessarily have this effect, because this could easily be true and yet the best interest of the child be subserved by placing it in the custody of another. So, when the trial court, after hearing the parties and others testify, concluded that in view of all the facts the children's future welfare would be best promoted by leaving them with their grandparents, the father being permitted to be with them at all reasonable hours, we cannot say that its action was arbitrary.

The second assignment is that the court erred in refusing to accord due faith and credit to a judgment of the superior court of Maricopa county awarding the custody of the children to their father upon the showing that the mother had died and left no estate, and that he was able and willing to have their custody and had prepared a suitable place for them.

The order of February 10, 1937, modifying the decree of March, 1931, was evidently entered upon the theory that the mother, to whom that decree had committed them, having died and left no estate, the father was the proper person to assume this responsibility, his petition stating that he was willing and able to do so. It did not appear that there was any other suitable person who could or would take charge of them, so, naturally, the *ex parte* order was entered. When, however, the respondents refused, notwithstanding this order, to let the father take the children and the petitioner obtained a writ of *habeas corpus* from another division of the same court to compel compliance, the latter, in determining who should have their custody, was in no way bound by that decision. In deciding this question the court should always be guided by what it believes to be the best interest of the child and this can only be ascertained from the facts presented when the matter is heard. The fact that some other court or a different judge of the same court, or even the same one, felt, when the question was presented to it three or four weeks or any other period of time prior thereto, that the child's best interest demanded that it be placed with one person, does not mean that this would necessarily be true then. The court before which the matter is later heard must consider it in the light of the child's surroundings then and, since these frequently change, the child's best interest at that time is the guide to a correct decision. It was in recognition of the controlling importance of the child's welfare in such actions that the court was given by section 2188, Revised Code of 1928, the power from time to time after the entry of the final decree of divorce to amend, change or alter any provision therein respecting the care, custody and maintenance of the children of the parties. Neither

*stare decisis* nor *res adjudicata* has any application in this situation.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.