7 Ariz. App. 132 (1968)
436 P.2d 910
In the Matter of the ADOPTION of Baby Boy KRUEGER, a Minor.
Jean STEFFEN and Barbara Steffen, Appellants,
v.
Jay S. BUNKER and Permelia Bunker, Appellees.
No. 1 CA-CIV 610.
Court of Appeals of Arizona.
February 6, 1968.
Rehearing Denied March 12, 1968.
Review Granted April 11, 1968.
Richard G. Neuheisel, Tempe, for appellants.
Rhodes, Killian & Legg, by John G. Hough, Mesa, for appellees.
*133 CAMERON, Chief Judge.
This is an appeal by the natural parents of a baby boy from a final order of adoption entered by the Juvenile Division of the Maricopa County Superior Court in favor of the appellees.
The questions presented on this appeal are:
1. Was the child born out of wedlock within the meaning of A.R.S. § 8-103?
2. Was the trial court correct when it found that the consent of the natural father and mother was not necessary?
3. Was there sufficient evidence to justify a finding that the best interests of the child would best be served by the adoption?
The facts necessary for a determination of this appeal are as follows. The appellants, Mr. and Mrs. Jean Steffen, are the natural parents of the child whose adoption is at issue. The appellees, Mr. and Mrs. Jay S. Bunker, are seeking to adopt the child in question. The Steffens are natives of Luxemburg and have been in the United States since 1952. They were married in 1949, and have two other children, a girl 10 and a boy 9. The Steffens began having marital troubles in 1959, and in 1961 Mr. Steffen left for 14 days. In September of 1963 Mr. Steffen left his family and went to Wisconsin. According to the testimony of Mrs. Steffen her husband:
"Sent me papers down that he wanted a divorce. * * *
"Then we turned around and sued for the divorce."
The divorce was granted by default on 13 May 1964. In June 1964 Mr. Steffen returned to Phoenix and lived with Mrs. Steffen as man and wife for a few weeks during which time the child in question was conceived. Mr. Steffen left again in July of 1964 and did not return until June 1965 after the child had been born.
When Mrs. Steffen discovered her pregnancy she consulted a doctor. She informed the doctor that she was unable to afford another child and hoped that he would be able to help her arrange for its adoption. The doctor referred her to an attorney, other than the one representing the Steffens on this appeal, to arrange for the adoption of the baby. Mrs. Steffen met with the attorney in March of 1965, and advised him that she was divorced, and that her husband was not aiding in the support of their children. The attorney agreed to arrange for the adoption of the child, and told her that she could change her mind at any time before the child was turned over to the adoptive parents.
Mrs. Steffen wanted to use an alias so that the father would not find out about the child. Mrs. Steffen never informed the attorney who the father was or whether he was her ex-husband. Mrs. Steffen, using the name of Barbara Krueger, signed the consent to the adoption in April. The consent, however, was not acknowledged until 18 May 1965 after the birth of the child on 17 May 1965. Mrs. Steffen also signed an instrument to verify that she had used the name of Barbara Krueger in the adoption and that:
"This alias was used to prevent embarassment to any of the parties connected with this adoption."
After the child was born Mrs. Steffen signed an instrument titled "Authorization For Release of Newborn Infant" in the presence of two witnesses, giving the hospital the authority to turn the baby over to the attorney. The attorney picked up the baby at the hospital and then placed the baby with the Bunkers. The Bunkers filed their petition for leave to adopt the child on 21 May 1965. On 24 May 1965 Mrs. Steffen wrote to the attorney seeking the return of her child, but he informed her that it was too late now that the child was in the hands of the adoptive parents.
Mrs. Steffen then advised her husband of what had happened and he returned to Arizona. The Steffens were remarried on 28 July 1965. On 12 August 1965 Mr. Steffen filed an affidavit with the Bureau *134 of Vital Statistics acknowledging the parentage of the child. The interlocutory order of adoption was granted on 7 September 1965.
On 15 November 1965 the Steffens' divorce decree was declared a nullity. The petition of Jean Steffen in the motion to set aside the decree stated:
"This Motion is based upon the further ground as stated in Rule 60(c) A.R.S. that since the parties hereto are remarried it is no longer equitable that the judgment should have any prospective application."
Mrs. Steffen did not contest the motion, and the court, after crossing out the words "nunc pro tunc", signed the order which read in part as follows:
"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the certain Decree of Divorce settled and approved in the above-entitled and numbered cause, May 13, 1964, is hereby declared to be a nullity and the same is ordered vacated and set aside nunc pro tunc."
On 22 November 1965 the Steffens filed a petition to set aside the interlocutory order of adoption. The Steffens then filed subsequent amendments to the petition to set aside the interlocutory order of adoption alleging in part that because of the setting aside of the divorce decree the child was not born out of wedlock.
The court heard argument to the questions raised by the petitions to set aside the interlocutory order of adoption on 1 April 1966. A hearing concerning the consent of the natural mother and the best interests of the child was ordered, and after an informal pretrial conference the hearing was held before Judge Jack D.H. Hays on 10 June 1966. On 21 July 1966 findings of fact and conclusions of law were signed by the court which found in part:
"2. That the subject minor child was conceived and born out of wedlock.
"3. That Barbara Steffen executed in writing a consent to the adoption of said minor child by the Bunkers, both before and after the birth of the said child. That Barbara Steffen expressed her intent to consent to such adoption orally before and after the birth of said child. That Barbara Steffen left the hospital where her child was born on May 17, 1965, without said child and with an intent that such child be adopted by Jay S. and Permelia T. Bunker. That Jay S. and Permelia T. Bunker did on the 21st day of May, 1965 file a petition for the adoption of said minor child.
"4. That no male person acknowledged parentage of said minor child prior to the filing of said petition for adoption.
"5. That an Interlocutory Order of Adoption of said minor child by Jay S. and Permelia T. Bunker was duly and properly entered on September 7, 1965.
"6. That no person contested or objected to the entry of the said Interlocutory Order of Adoption.
* * * * * *
"13. That the interests of the subject child will be promoted by his being adopted by Jay S. and Permelia T. Bunker.
* * * * * *
"16. That Petitioner, Jean Steffen in September 1963 left his wife and children in a destitute condition without just cause, was thereafter divorced by his wife, Barbara, in May of 1964 and failed to provide for his family for a period in excess of twenty-two months."
A reading of the transcript of the hearing of 10 June 1966 supports the findings of fact by the court. The court concluded:
"4. That the interests of the subject child will be promoted by his being adopted by Jay S. and Permelia T. Bunker.
"5. That the consent of Jean Steffen is not necessary for the adoption of said child by Jay S. and Permelia T. Bunker.
"6. That the consent of Barbara Steffen is not necessary for the adoption of said child by Jay S. and Permelia T. Bunker.

*135 "7. That it is in the best interest of the subject minor child to order his adoption by Jay S. and Permelia T. Bunker."
On 17 October the court signed the formal written judgment denying relief sought by the Steffens. After further proceedings the final order of adoption was signed on 7 February 1967, and the Steffens appealed.
WAS THE CHILD BORN OUT OF WEDLOCK?
It is contended by the appellants that the nullification of the final decree of divorce restored the marital status of the parties and the child was not born out of wedlock, and therefore the father's consent was required under A.R.S. § 8-103. On 20 September 1965 Mr. Steffen moved to set aside the divorce decree of 13 May 1964 under Rule 60(c). There is no doubt that Rule 60(c) applies to divorce decrees as well as other judgments. Damiano v. Damiano, 83 Ariz. 366, 321 P.2d 1027 (1958). Rules 60(c) of the Rules of Civil Procedure, 16 A.R.S., states in part:
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, * * * for the following reasons: * * *
"5. it is no longer equitable that the judgment should have prospective application; * * *
"A motion under this subdivision does not affect the finality of a judgment or suspend its operation. * * *"
It is clear from this rule that while a party to the judgment may seek and obtain relief under this rule, that relief does not affect rights of third parties obtained under a prior valid judgment. In the instant case a valid decree of divorce was in effect at the time the child was conceived and when he was born, and said decree was not set aside until after the child was born. There is nothing to indicate that the court did not have jurisdiction to grant the divorce, and there being a divorce, both at the time of conception and birth, the child may be considered to have been born out of wedlock as required in A.R.S. § 8-103.
WAS THE NATURAL MOTHER'S AND FATHER'S CONSENT NECESSARY?
The next issue before the Court is whether or not the father's consent was needed in this case. The statute dealing with consent of the parents in adoptions is A.R.S. § 8-103 which states in part:
"A. Before the court may enter an order for adoption of a minor, the provisions of this section which are applicable to the proceedings shall be observed: (1) Consent to the adoption shall be obtained from the individuals or agencies found capable of giving consent under the following circumstances: * * * (b) The mother only of a child born out of wedlock, but the consent of the father of a child born out of wedlock shall be required if the father has acknowledged his parentage, either by subsequent marriage to the mother, or by recording in the office of the state bureau of vital statistics prior to the filing of the petition for adoption a notarized certificate of parental acknowledgment as to the child. * * *" (emphasis supplied)
In the instant case the child in question was born out of wedlock as stated above, and the statute requires the father's consent only if he has acknowledged parentage either by subsequent marriage or by recording in the office of the State Bureau of Vital Statistics. Mr. Steffen did both of these, however, neither act was done prior to the filing of the petition for adoption. We therefore hold that the natural father's consent was not required.
But even if the natural father had timely complied with A.R.S. § 8-103, we feel that the trial court has not only dispensed with the natural father's consent but with the mother's consent as well by complying with A.R.S. § 8-104 which allows the court to order an adoption without consent *136 after a hearing and written findings of fact. § 8-104 reads as follows:
"An order of adoption may be entered without the consent of the parent or legally appointed guardian when, after hearing, the court determines that the interests of the child will be promoted thereby. In such cases, the court shall make written findings of all facts upon which its order is founded."
This section was added to the statute by the legislature in 1952 and supersedes the earlier Arizona Supreme Court case of Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842 (1948).
There is no question that both Mr. and Mrs. Steffen appeared and were heard in this matter, and that the court had jurisdiction to enter the decree of adoption. The finding of the court that the consent of both Mr. and Mrs. Steffen was not necessary for the adoption was supported by the facts and complied with the law. Petition for Kelley Minors, 6 Ariz. App. 299, 432 P.2d 158 (1967), Anguis v. Superior Court, 6 Ariz. App. 68, 429 P.2d 702 (1967).
Appellant also raised objection to the sufficiency and form of Mrs. Steffen's consent to the adoption. Having found that the trial court was correct in dispensing with Mrs. Steffen's consent, we do not consider the form or sufficiency of the consent admittedly signed by Mrs. Steffen.
WAS THE BEST INTEREST OF THE CHILD SERVED BY THE ADOPTION?
The final question raised on appeal is whether or not the trial court erred when it denied the appellants' petition to set aside the interlocutory order of adoption, and found it would be in the best interests of the child that he stay with the adoptive parents. Our courts have consistently stated that the welfare of the child is the primary consideration when passing upon an adoption application, and the trial judge is in the best position to determine whether the child's interests will best be served with the adoptive parents. Should the trial court determine that an adoption would be best for the child the appellate court will not interfere with the exercise of this discretion unless there is a clear abuse manifested. In Re Adoption of Luke, 3 Ariz. App. 327, 414 P.2d 176 (1966), Petition for Kelley Minors, supra. Our Court has stated:
"It is apparent that the court is invested with power to decree the adoption of a child without anyone's consent where, upon a hearing, it appears that the child's welfare will thereby be promoted." In Re Anonymous, 4 Ariz. App. 588, 590, 422 P.2d 419 (1967).
A hearing was held in this case in order to determine what would be best for the child. Both sides were represented by counsel, and the judge was provided sufficient information with which to make a determination. The trial court determined that it would be best if this child remained with the adoptive parents. We are unable to find from the record that he abused this discretion.
Judgment affirmed.
STEVENS, J., and MELVYN T. SHELLEY, Judge of the Superior Court, concur.
NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from consideration of this matter Judge MELVYN T. SHELLEY was called to sit in his stead and participate in the determination of this decision.