10 Ariz. App. 47 (1969)
455 P.2d 997
In the Matter of the ADOPTION OF a BABY BOY.
The NATURAL MOTHER, Appellant,
v.
The ADOPTING PARENTS, Appellees.
No. 1 CA-CIV 899.
Court of Appeals of Arizona.
June 17, 1969.
Rehearing Denied July 31, 1969.
Review Denied October 7, 1969.
*48 W. Michael Hammer, Phoenix, for appellant.
Benton L. Blake, Phoenix, for appellees.
JOHN A. McGUIRE, Judge of Superior Court.
The dates and names are not set forth in this opinion and have been deleted from any direct quotations from the record. We will refer to the child as the child; to the natural parents as the father and mother; to the adopting parents as the adopting parents or as may be appropriate as the adopting father and the adopting mother.
The father and mother were husband and wife and had been for an appropriate time before the birth of the child. The mother is a member of a respectable working family and she was employed before her marriage. It was not until after her marriage that she had trouble with the law. The father was not a model; he worked little and drank too much. The mother's first problem with the law was her arrest and plea of guilty in another state as an accessory to a forgery, she having passed the check which her husband forged.
She wrote several insufficient checks in Phoenix and two checks so written were held by the authorities in Tucson. Within days after the birth of the child she was arrested in Phoenix in connection with the checks. The father was a relative of the adopting mother and the child was given to the persons who later petitioned as the adopting parents and who cared for the child. On pleas of guilty the mother was sent to the Arizona State Prison for two consecutive terms of one to five years each.
*49 The adopting parents, with the consent of the mother, became the child's legal guardians. At the time she consented to the guardianship the mother stated she would not consent to an adoption. The record discloses she never consented to an adoption but has resisted it from the start.
The petition for appointment of guardian under which the adopting parents obtained the legal custody of the child recites:
"That the natural parents of said minor child have asked petitioners herein to take the minor child into their home and to raise and support said minor until such time as said parents are re-united as husband and wife and are able to provide a fit and proper home for said minor child; that predicated on the foregoing situation, the parents of said minor child did on or about the * * * leave said child with petitioners." (Emphasis supplied)
The father died. The child received approximately $90 a month from the Veterans' Administration and from Social Security which the adopting parents as guardians placed in a savings account for the child.
The adopting parents had the care of the child for approximately a year and a half before they filed their petition for adoption. It was after the filing of the petition and prior to the hearing that the father died. At the time of the petition and at the time of the hearing, the mother was in Arizona State Prison. She attended the hearing and with the aid of counsel from the Legal Aid Society contested the adoption. Her brother and his wife came to Phoenix to testify and to offer their aid as well as the aid of her parents. Nothing adverse to the family is found in the record. The mother received the promise of reemployment with her former employer upon her release from confinement. The brother testified that he had made arrangements to pay the outstanding checks in Tucson and that the county attorney had agreed to dismiss any charges arising therefrom.
At the time of the hearing the mother was 26 years of age. The adopting parents were well-established people approximately 20 years older than the mother and of a different religion. Their 6 children range in age from 24 to 13 years. The 3 youngest still live at home. The evidence disclosed that the adopting parents were fully qualified in all respects to be the parents of the child although the mother urges that they were too old.
In the findings of fact prepared by the trial judge there is no finding that the mother was an unfit person. There are but two findings of fact that are derogatory to the mother. They are
"5. That on * * * the natural mother was arrested in Maricopa County, Arizona, on one or more charges of having passed bogus checks or checks drawn on accounts of insufficient funds; that she subsequently pleaded guilty to two counts and was sentenced to serve consecutive terms of one to five years each.
"6. That the natural mother is presently a prisoner in the Arizona State Prison and will not be eligible for parole before * * *."
The date given is approximately fifteen months from the date of hearing; however it does appear from an affidavit made by the natural mother in connection with the taking of her appeal and which was copied into the abstract of record that in fact she was released from the prison less than three months from the hearing date and immediately returned to her former home area and went back to work at her old job. This last matter cannot however be considered on the question of whether error was committed.
The trial court however did expressly find "that the best interest of the child will *50 be promoted by permitting the petitioners to adopt him". The interlocutory order purported to sever the parental rights of the mother to the child and this is urged as error.
Through legal aid another attorney perfected and presented the appeal. Appeals may be taken from interlocutory orders, as well as from final orders of adoption. A.R.S. § 8-110.
An attack is made upon the jurisdiction of the trial court by appellant upon various grounds, of which only one need be discussed in this opinion. The regular juvenile judge of Maricopa County transferred this matter to Judge Hardy for hearing. Rule XVI(a) (2) of the Uniform Rules of Practice, as amended February, 1967, 17 A.R.S., provides that in Maricopa County the juvenile court division is "* * * charged with Juvenile and Adoption matters and habeas corpus proceedings involving juveniles". We construe this to provide a general rule of practice for the hearing of these cases and not as precluding the judge of the juvenile court in Maricopa County from transferring an adoption case to another judge.
This Court must then proceed to the real and vital question in this case, which is what must appear and what findings must be made before a child is adopted over the objection of the natural mother.
Arizona has a number of judicial decisions involving cases where the natural mother of the child has consented to the adoption and later has endeavored to retract the consent (e.g., In Re Adoption of Krueger, 104 Ariz. 26, 448 P.2d 82 (1968); In Re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372 (1956).) These cases are however not in point in the present case where the mother has fought from the start. In Lee v. Thomas, 297 Ky. 858, 181 S.W.2d 457, 460 (1944), it was held:
"But no opinion of any court so far as we are aware approves the right in anyone to take away from natural parents the custody of their children solely upon the ground that the adopting parent is better prepared to provide superior advantages to the child which the natural parent for any cause might be unable to provide."
That court then went on to hold that a consent once executed could not be arbitrarily rescinded which is in accordance with the Arizona rule.
No Arizona case can be found in which an adoption has been granted over the objection of the natural parent, who had never consented, without a finding of unfitness. The nearest to such a case is In Re Clough, 28 Ariz. 204, 236 P. 700 (1925), in which it was held that the evidence was sufficient to show that the best interests of the child would be served by its adoption; however the matter of unfitness was not discussed, nor were the specific findings mentioned in the opinion.
In the case of In Re Clark, 38 Ariz. 481, 486, 1 P.2d 112 (1931), the court quoted 1 Cal.Jur. 436, § 19, as follows:
"The parents are the natural guardians and cannot be deprived of their right to the care, custody, society and services of their children, except by a proceeding to which they are made parties, and in which it is shown that they are unfit or unwilling or unable to perform their parental duties. Every intendment should be in favor of the claim of the parent upon the evidence, and where the statute is open to construction and interpretation, it should be construed in support of the right of the natural parent."
In Caruso v. Superior Court In and For County of Pima, 100 Ariz. 167, 173, 412 P.2d 463, 467 (1966), the court said in reference to juvenile court proceedings:
"We will recognize petitioner's right to his child until his unfitness clearly appears or until it is shown by clear and convincing evidence that the child is dependent, *51 neglected, incorrigible, or delinquent."
Even in custody matters it has been held that there must be a showing of parental unfitness or neglect before custody may be given to another. Clifford v. Woodford, 83 Ariz. 257, 320 P.2d 452 (1957). This is true even though the custody can be changed back to the parent in proceedings subsequently brought if such appears for the welfare of the children. Adoption on the other hand is final; the parents' rights are not merely suspended but completely destroyed; and the rights of the child in the parent are likewise destroyed; hence a stronger showing should be required against the parent than for deprivation of custody.
"Although there are some decisions which apparently grant or deny the adoption solely on the ground of the child's welfare, it must be noticed that in every case where a parent's protest to the adoption is unavailing, the parent has been guilty of conduct which would make it undesirable for such parent to have the care and custody of the child, and the welfare of the child to be promoted consisted in something more than mere pecuniary advantage." 2 C.J.S. Adoption of Children § 21, p. 384 (1936).
"Generally speaking, adoption statutes will be strictly construed in favor of the rights of the natural parents in controversies involving termination of the relation of parent and child, especially in those cases where it is claimed that owing to misconduct his consent to the adoption is not required. Every intendment should be made in such a case in favor of the parent's claim, and where the statute is open to construction and interpretation, it should be construed in support of the parent's natural rights." 2 Am.Jur.2d, Adoption, § 7, p. 866 (1962).
The adopting parents, in their capacity as guardians, already had custody of the child and the mother could not interfere with such custody without a court order. This is true even though adoption proceedings had never been filed or had been dismissed. There was, therefore, no reason why the question of the adoption of this child could not be delayed until the mother had been released from prison and given an opportunity to show by her life whether her child should be forever taken from her. Check offenses of the type involved herein do not prove per se that a mother is unfit and should never be allowed the custody of her child.
The trial judge should either have dismissed the petition without prejudice to its refiling after the mother's release or continued the matter to await that contingency.
A parent, who has never consented to the adoption, may not, over his objection be deprived of his child by having it adopted to another, unless his neglect or unfitness if clearly made to appear.
This construction of the law is in accord with the duty and policy of the law to protect the parent-child relationship and is supported by the authorities above cited. The Supreme Court of the United States in Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1924), said in invalidating an act requiring all children to attend the public schools:
"The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."
Grave questions of constitutionality would arise were it to be held that a child could be adopted away from his natural parents who had never consented, and over their objection, without any showing of neglect or unfitness.
The interlocutory decree purported to sever the appellant's parental rights. Such rights may be severed only by the final order of adoption. A.R.S. § 8-108, subsec. *52 A. Anguis v. Superior Court, 6 Ariz. App. 68, 429 P.2d 702 (1967).
A completely new hearing is not necessary as the case can be remanded with instructions to reopen the original hearing and take such additional testimony as may be offered by either of the parties as to all material matters. The mother must show the circumstances of her life following release from prison.
That portion of the interlocutory decree purporting to sever the parental rights of the mother is stricken and the case is remanded to the Superior Court of Maricopa County for further proceedings in accordance with this opinion.
DONOFRIO, C.J., concurs.
STEVENS, Judge (dissenting).
I agree with the majority upholding Judge Hardy's authority to conduct the hearing. I agree that the interlocutory order was in error in purporting to sever the parental rights.
There are two minor issues, both of which I would decide favorably to the appellees. In my opinion the majority has so ruled by not answering these issues. These issues are relative to the question of the service of the adoption petition upon the State Department of Public Welfare, A.R.S. § 8-105, and the question relative to the use of the adoptions examiner's report.
In my opinion our statute (A.R.S. § 8-104) is clear. The statute does not require a finding of parental unfitness as a condition precedent to adoption when the trial judge meets the heavy responsibility in finding that adoption is to the best interest of the child. In my opinion whether a natural parent has always resisted adoption or has once consented and then withdrawn that consent is not a matter of vital significance if at the time of the hearing the natural parent is a fit parent and if, as the majority seem to hold, there can be no adoption unless two findings are made; one, that the natural parent is unfit and, two, that adoption is in the best interest of the child. The test, in my opinion, is to be determined by the Legislature.
I disagree with the majority wherein it points out that the natural mother's affidavit in support of her request for a free record on appeal discloses that she is no longer in prison and that this fact is not considered by the majority in this ruling. It appears to me that this disclosure in the record which does not relate to the merits of Judge Hardy's order is the basis upon which the final ruling of the majority stands.
In my opinion the basic issues should be resolved as follows:
THE BEST INTERESTS OF THE CHILD
The appellant relies heavily upon Westerlund v. Croaff, 68 Ariz. 36, 198 P.2d 842 (1948) and upon Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463 (1966) in support of her position that the trial court erred in entering an interlocutory order and in finding that it was to the best interest of the minor child that the petition for adoption be granted.
A.R.S. § 8-104 is as follows:
"An order of adoption may be entered without the consent of the parent or legally appointed guardian when, after hearing, the court determines that the interests of the child will be promoted thereby. In such cases, the court shall make written findings of all facts upon which its order is founded."
Section 1193 of the 1913 Civil Code provided in part as follows:
"The judge * * * if satisfied that the interests of the child will be promoted by the adoption, he must make an order * * *. An adoption may be decreed without the consent of the parent, * * * where the judge considers that the interests of the child will be promoted thereby."
The 1913 Code section was considered in the adoption of In Re Clough, 28 Ariz. 204, 236 P. 700 (1925). In Clough the *53 Court stated on page 206 of 28 Ariz., page 700 of 236 P.:
"Many, if not most, of these statutes expressly state that the consent of the parent is not necessary if the best interest of the child requires adoption, and the constitutionality of such laws has always been upheld. * * *
* * * * * *
"Under paragraph 1193, R.S.A. 1913 (Civ.Code), the consent of the parent is expressly declared not necessary if it appears to the court that the best interests of the child will be promoted thereby. We see no merit in the suggestion that the court has no jurisdiction to grant letters of adoption against the will of the parent, if it is for the best interests of the child that it be done."
In substance the current law found in Arizona, § 8-104 (adopted in 1952) is the equivalent of the 1913 Code section.
The statutory authorization found in the current laws of Arizona and in the laws of Arizona at the time of the decision in Clough was not present at the time of the decision in Westerlund. I am unable to agree with that portion of the opinion in Luke, infra, wherein the Court on page 329 of 3 Ariz. App., page 178 of 414 P.2d cited Westerlund and stated that "such [parental] consent is a jurisdictional prerequisite to a valid adoption".
The Arizona Supreme Court since the enactment of A.R.S. § 8-104 has upheld adoptions without parental consent where the trial court has found that the adoption was in the best interest of the child. In Anderson v. Pima County Department of Public Welfare, 77 Ariz. 339, 271 P.2d 834 (1954) the Court so held and distinguished the Westerlund case. In In Re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372 (1956) the Supreme Court upheld an adoption which was to the best interest of the child even in the face of a finding that the natural mother and the adopting parents were fit to raise the child.
There is language in Caruso v. Superior Court in and for County of Pima, 100 Ariz. 167, 412 P.2d 463 (1966) which gives support to the appellant's contention that before a child can be adopted that child must be found to be a dependent child within the meaning of § 15 of the Constitution and within A.R.S. § 8-201. In the more recent case of Krueger the Arizona Supreme Court upheld an adoption wherein it was found that the adoption was for the best interest of the child. In Krueger the majority of the Court upheld the adoption and Caruso was brought to their attention in the dissenting opinion. I observe also that Caruso was another instance wherein it was attempted to sever parental rights in a proceeding independent of an actual adoption proceeding.
The appellant relies on Arizona State Department of Public Welfare v. Barlow, 80 Ariz. 249, 296 P.2d 298 (1956). Barlow was a habeas corpus matter arising out of a juvenile court determination that the children in question were dependent and neglected within the meaning of A.R.S. § 8-201. The Supreme Court carefully pointed out that in the litigation no evidence was presented as to the best interest and welfare of the children.
THE CONCLUSIONS OF THE MAJORITY
I am not aware of the authority to return this matter for a continuation of the hearing which we are now reviewing. If conditions change after the entry of the interlocutory order and prior to the entry of the final decree of adoption justifying a change in the order and a denial of the adoption these could be presented to the trial court. A final decree of adoption does not follow as a matter of right after the entry of an interlocutory order. A.R.S. § 8-107, subsec. B. This rule of law is illustrated by In Re Adoption of Krueger, 7 Ariz. App. 132, 436 P.2d 910 (1968) as affirmed by the Arizona Supreme Court in the case by the same name, 104 Ariz. 26, 448 P.2d 82 (1968) wherein the contest was presented after the interlocutory decree. It is also illustrated by the case of In Re Adoption of Luke, 3 Ariz. App. 327, *54 414 P.2d 176 (1966), review denied, wherein it was stated that the interlocutory decree is provisional only and the appeal arose from an order vacating the interlocutory decree, refusing the final decree of adoption which action was affirmed on appeal.
I would vacate so much of the interlocutory order as purports to sever the parental rights. I would then affirm the interlocutory order as so amended.
NOTE: Judge JAMES DUKE CAMERON having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.