520 P.2d 1172

William A. GOWLAND, By and Through his next friend and father, Frank F. Gowland, Appellant,

v.

Clifford L. MARTIN and Pearl Martin, husband and wife, Appellees.

No. I CA–CIV 2344.

Court of Appeals of Arizona, Division 1.

April 11, 1974.

---

1. The *Papachristou* decision was a unanimous opinion but POWELL and REHNQUIST, JJ., did not participate.

**496**

Smith & Buckley by Darrell F. Smith, Mesa, for appellant.

L. Alton Riggs, Jr., Mesa, for appellees.

## OPINION

HATHAWAY, Chief Judge.

Plaintiff William A. Gowland (hereinafter referred to as "Bill") has appealed from an award of the custody of his son to the latter's maternal grandparents, Mr. and Mrs. Martin.

Bill married Joyce Dawn Martin (hereinafter "Joyce") in 1968 when both were 14 years old. Both Bill's parents, Mr. and Mrs. Gowland and Joyce's parents, appellees Mr. and Mrs. Martin, consented to the marriage. Soon thereafter a child, Troy Vincent Gowland (hereinafter "Troy") was born of the marriage. The couple lived together for the first two years of marriage either with or near their parents in Mesa and were financially supported by both sets of parents. During the first two years, Bill stayed in school while Joyce eventually dropped out. The marriage broke up in the early summer of 1970 when Bill accompanied his parents to Canada for the summer leaving Joyce and Troy with her parents, Mr. and Mrs. Martin, who then owned and lived on a ranch near Young, Arizona, approximately 145 miles from Mesa.

Joyce began living with another man that summer and accompanied him to California where they traveled with a circus. Periodically she returned to her parents' ranch for a visit. Between the summer of 1970 and the trial in July, 1972, Mr. and Mrs. Martin had cared for and completely supported Troy. Bill, after he returned from Canada, continued to live with his parents in Mesa during the two years preceding trial and graduated from high school 7 months before trial.

In October, 1970, Bill filed for a divorce seeking custody of Troy. Mr. and Mrs. Martin intervened and petitioned that they be granted custody of Troy. The trial court finding that "neither the plaintiff [Bill] nor the defendant [Joyce] . . . are capable of providing the proper care", awarded custody to Joyce's parents, Mr. and Mrs. Martin, and temporary custody one weekend a month and 30 days each summer to Bill's parents, Mr. and Mrs. Gowland.

Basically, Bill contends on appeal that the custody order was against the best interests of the child and in addition, that the court failed to recognize the natural father's right to custody as against all other persons except the mother.

In awarding the custody of minor children in a divorce proceeding, the interest of the child is of paramount importance, the trial court is given broad discretion in determining what will be most beneficial for the child, and a reviewing court will not disturb its decision unless it has mis-

taken or ignored the evidence. Johnson v. Johnson, 105 Ariz. 233, 462 P.2d 782 (1969); Henning v. Henning, 89 Ariz. 330, 362 P.2d 124 (1961).

■ While early decisions in this jurisdiction have spoken of the right of the natural parent to have custody of his own children as against anyone else,[1] Harper v. Tipple, 21 Ariz. 41, 184 P. 1005 (1919); In re Winn, 48 Ariz. 529, 63 P.2d 198 (1936), our Supreme Court has made it clear that this parental right to custody can and should be ignored if the best interests of the child demand otherwise. Clifford v. Woodford, 83 Ariz. 257, 320 P.2d 452 (1957); Dickason v. Sturdavan, 50 Ariz. 382, 72 P.2d 584 (1937). In *Dickason*, a case in which the father and the maternal grandparents each sought custody, the court reasoned as follows:

"(T)here can be no question under all the authorities but that in answering the query, Who should have the custody of the children? the pole star by which it is led to a decision is their best interest. While it is true that a father who is a proper and fit person to care for his child, is entitled to its custody above any other person, since the 'voice of nature, which declares that the father is the natural guardian of the minor child, cannot be silenced,' Harper v. Tipple, 21 Ariz. 41, 184 P. 1005, 1006, yet he must be so fit and suitable for the performance of this most important function that the court can say that the child's best interest will be subserved by placing it in his care and custody. The paramount consideration being the child's welfare, the parents' *prima facie* right to its custody is not an unconditional one. Neither does the sole fact that one is the parent and able and willing to care for it necessarily have this effect, because this could easily be true and yet the best interest of the child be subserved by placing it in the custody

of another. So, when the trial court, after hearing the parties and others testify, concluded that in view of all the facts the children's future welfare would be best promoted by leaving them with their grandparents, the father being permitted to be with them at all reasonable hours, we cannot say that its action was arbitrary." (50 Ariz. at 387, 72 P.2d at 586-87).

Whatever the validity of the parental right doctrine, the authorities are unanimous that it has no application when the parent is proven to be unfit. Clifford v. Woodford, supra; In re Winn, supra; Harper v. Tipple, supra; see Note, 8 Ariz. L.R. 163.

At trial, it was apparent that Bill had gained in maturity since his separation from his wife and child two years earlier. He had graduated from high school with good grades and a record of participation in varied activities. He was taking art classes at a local junior college and working approximately 60 hours per week taking home approximately $85.00 per week. He stated that he wished to further his education beyond high school. He was living with his parents Mr. and Mrs. Gowland. However, he had only been working for a month prior to trial and had various debts outstanding. Bill stated on direct examination that he was "hoping" he could take care of Troy and would probably need some financial help from his parents. His mother testified that Bill would be capable of caring for Troy with the help of Mr. Gowland and herself until he was older and in a better position to do the job himself.

Pursuant to a court order a Conciliation Court counselor conducted a background investigation into the custody issue. She concluded as follows:

"Counselor doubts Bill is capable of assuming complete responsibility at this

---

1. This right is strictly enforced in adoption cases where the parent has no possibility of regaining custody through a modification of an award. See Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463 (1966); In re Adoption of Baby Boy, 10 Ariz.App. 47, 455 P.2d 997 (1969).

time due to his lack of experience in the father role and his needs to finish preparing his own life."

However, because both sets of grandparents were equally fit and could provide good homes (this was basically undisputed at trial), she recommended that Troy be placed with Mr. and Mrs. Gowland so he would be in proximity to his natural father.

■ This report and Bill's own testimony provide a sufficient evidentiary basis for a conclusion that Bill, at this time, is unfit. There was no serious contention that Mr. and Mrs. Martin are unfit and much favorable testimony was introduced as to their past care of Troy.

It is of interest to note that the counselor who conducted the custody investigation for the court recommended that Mr. and Mrs. Gowland be awarded custody of Troy since both sets of grandparents were equally capable of providing a good home and since it would give Troy an opportunity to be closer to his father. While the trial court could properly have concluded that this would have been in the best interests of the child, Mr. and Mrs. Gowland were not parties to the proceeding and did not seek custody. The trial court's award of temporary custody to Mr. and Mrs. Gowland one weekend per month and 30 days each summer is unchallenged by Mr. and Mrs. Martin on appeal.

■ Bill contends in essence that although he is unfit to care for the child alone, the fact that he lives with his parents who expressed their willingness to assist him in caring for Troy, makes him legally fit to have custody of the child. We reject this argument. An award of custody to Bill would place no *legal obligation* upon his parents to support or assist in caring for Troy. They could die or move out of the state leaving Troy completely in Bill's hands. Conversely, Bill would have the legal right to move away from his parents taking Troy with him. We do not think that the trial court abused its discretion in recognizing that whenever possible,

the well-being of a child should be made to rest upon a concrete legal obligation rather than moral assurances. The assurances given that Mr. and Mrs. Gowland would care for the child could break down upon, among other events, a family argument among the Gowlands, or Bill's decision to take a job in another city. On the other hand, the custody award, as it now stands places a legal obligation upon Mr. and Mrs. Martin to support and raise the child.

Mr. and Mrs. Martin do not plan to raise Troy to maturity, but only until one of the natural parents is in a position to offer the child a good home. If Bill's present course of development continues, he should become fit to have full custody and control of the child. He could then seek a modification of the award.

However, the evidence compels us to conclude that the trial court did not abuse its discretion in its custody award.

Affirmed.

KRUCKER and HOWARD, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).